SOL LUIS DESCARTES, TESORERO DE PUERTO RICO, peticionario,. *v.* TRIBUNAL DE CONTRIBUCIONES DE PUERTO RICO, demandado; CERVECERÍA INDIA, INC., interventora.

Núm. 236.—*Sometido:* Abril 3, 1950. *Resuelto:* Junio 5, 1950.

*Hon. Procurador General Vicente Géigel Polanco* y *Manuel J. Medina Aymat, Procurador General Auxiliar,* abogados del peticionario; *J. Alemañy Sosa,* abogado de la interventora.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión del tribunal.

La aquí interventora radicó querella en el Tribunal de Contribuciones solicitando el reintegro de la suma de $19.51 pagada bajo protesta, en concepto de arbitrios, sobre un taladro eléctrico importado de Estados Unidos, con un valor de $98.50, para uso en el taller de reparaciones de su planta industrial, por el fundamento de que el mismo constituía maquinaria esencial para el funcionamiento de sus plantas industriales en la fase fabril. El Tesorero, aquí peticionario, se opuso a las pretensiones de la contribuyente alegando que el taladro eléctrico de referencia no era esencial al establecimiento y funcionamiento de las plantas industriales de la interventora, y que por lo tanto no estaba incluído en la exención provista por la sección 16-B de la Ley de Rentas Internas, según quedó enmendada por la Ley núm. 436 de 14 de mayo de 1947 ((1) pág. 909).

El Tribunal de Contribuciones declaró con lugar la querella, considerando que, de acuerdo con la prueba, el taladro era "parte esencial del taller de reparaciones de la recurrente, requerido para conservar en funcionamiento, y establecida en forma adecuada, su fábrica, o sea su establecimiento en su parte fabril." Los hechos que consideró probados y que sirvieron de base a la anterior conclusión, son los siguientes, según los resume el propio tribunal inferior:

"El taladro está instalado y en funcionamiento en el taller de reparaciones del establecimiento industrial de la recurrente, el cual está ubicado en la ciudad de Mayagüez y dedicado a la fabricación y venta de cerveza, malta y bebidas gaseosas.

"José Cestero, Jr., ingeniero mecánico en el ejercicio de su profesión por espacio de doce años, ha estado no menos de tres años desempeñando el cargo de ingeniero jefe de la cervecería de la recurrente. Tiene a su cargo toda la maquinaria utilizada en la fabricación y embotellado de los productos del establecimiento; y es de su incumbencia conservar la misma en buen estado de funcionamiento.

"Para tal cosa, y debido a que los talleres existentes en la población de Mayagüez no podían rendir el servicio exigido por su empresa con la eficiencia y prontitud requeridas en el negocio, la Cervecería India, Inc. erigió su taller mecánico, en el cual, bajo su dirección, se utilizan tornos, taladros, máquina de soldar, prensa hidráulica, máquina de roscar, y herramientas, en las reparaciones de su equipo de fabricación y envase.

"El taladro a que se refiere esta querella es movido por un motor eléctrico y está provisto de un dispositivo en el que se insertan barrenas que son usadas en la perforación de piezas y utensilios empleados en la fábrica, y para barrenar pestañas de tubos. El taladro se ha usado también para sacar tornillos cuyos vástagos se han roto; así como en trabajos misceláneos útiles para hacer reparaciones de todas clases mientras la fábrica se halla en funcionamiento, o de otro modo—dependiendo el uso que del mismo se haga de las reparaciones imprevistas que hubiere que efectuar.

"Antes de la adquisición del taladro, o sea hasta agosto de 1947, la empresa tenía que recurrir a los talleres existentes en Mayagüez. El nuevo taladro, de un valor de $98.50, se usa para hacer las reparaciones de maquinaria, aparatos y utensilios de la recurrente, exclusivamente."

Para revisar la resolución que declaró con lugar la querella, expedimos el auto de *certiorari*.

El peticionario sostiene que el tribunal inferior cometió error de derecho al aplicar la sección 16-B de la Ley de Rentas Internas antes mencionada, ya que el taladro eléctrico en cuestión no forma parte de "la maquinaria de la fase fabril productiva del proceso industrial" de la interventora. Creemos que tiene razón.

La sección 16-B de la Ley de Rentas Internas de Puerto Rico, según quedó enmendada por la Ley núm. 436 de 14 de mayo de 1947 (¹) limitó, con su tercer Disponiéndose, el alcance de la exención que antes de la aludida enmienda establecía la referida sección 16-B. Ésta, en su texto original, en lo pertinente disponía: "Estarán exentos del pago de los arbitrios impuestos por esta Ley toda maquinaria, aparato o equipo que sea esencial para el establecimiento y funcionamiento de plantas industriales. . ." El tercer "Disponiéndose" de dicha sección 16-B, según la enmienda a que hemos hecho referencia, reza así: *"Disponiéndose, finalmente, que por ser ésta una exención que ampara la maquinaria esencial para el establecimiento y funcionamiento de plantas industriales, deberá entenderse aplicable sólo a la maquinaria de la fase fabril productiva del proceso industrial que intervenga con las materias primas desde el comienzo del proceso de manufactura hasta su terminación,* incluyendo envase y rotulación del producto; pero no amparará la maquinaria, apa-

---

(¹) Dicha sección dispone:

"Sección 16-B.—Estará exento del pago de los arbitrios impuestos por esta Ley todo aparato, maquinaria o equipo que sea esencial para el establecimiento y funcionamiento de plantas industriales; *Disponiéndose,* que se considerarán comprendidas en esta exención las subunidades o fases principales (*major features*) de dichos aparatos, equipo o maquinaria, que sean necesarias para reponer otras subunidades o para ampliar o mejorar el equipo, pero no estarán incluídos las partes, piezas o accesorios de la maquinaria o de la subunidad cuyo 'costo en Puerto Rico' por unidad individual sea menor de veinte (20) dólares; *Disponiéndose, asimismo,* que por subunidad o fase principal (*major feature*) se entenderá aquellas secciones, partes o accesorios sustanciales de la maquinaria o equipo esencial; *Disponiéndose, finalmente,* que por ser ésta una exención que ampara la maquinaria esencial para el establecimiento y funcionamiento de plantas industriales, deberá entenderse aplicable sólo a la maquinaria de la fase fabril productiva del proceso industrial que intervenga con las materias primas desde el comienzo del proceso de manufactura hasta su terminación, incluyendo envase y rotulación del producto; pero no amparará la maquinaria, aparatos, equipo, ni vehículos empleados en la fase administrativa o comercial de la industria; *Disponiéndose, sin embargo,* que se considerará amparado por la exención cualquiera maquinaria o equipo que se instale en la planta manufacturera con fines de salubridad de operarios o de prevención de accidentes."

ratos, equipo, ni vehículos empleados en la fase administrativa o comercial de la industria." (Bastardillas nuestras.) Es evidente, pues, que el propósito legislativo fué circunscribir la exención que concedía la sección 16-B antes de la enmienda de 14 de mayo de 1947, [2] tan sólo a la *maquinaria de la fase fabril productiva del proceso industrial* en sí, que tuviera necesariamente que intervenir con la conversión de las materias primas desde el comienzo del proceso de elaboración o manufactura hasta su terminación. Ninguna otra maquinaria que no intervenga con la conversión de las materias primas desde el comienzo del proceso hasta su terminación quedó amparada por la exención, según la enmienda ya citada.

■■ En el presente caso se trata de un taladro eléctrico que, según la prueba, forma parte de un taller mecánico que se usa para reparar la maquinaria o equipo de la interventora en sus plantas industriales, no formando parte, sin embargo, de la maquinaria que indispensablemente interviene con la materia prima en sí desde el comienzo del proceso de manufactura hasta su terminación. Y tratándose de una exención contributiva, la misma debe ser interpretada restrictivamente. *National Hats Co.* v. *Sancho, Tes.*, 65 D.P.R. 241; *Buscaglia, Tes.* v. *Tribl. Contribuciones*, 68 D.P.R. 37; *Central Coloso* v. *Tribl. de Contribuciones*, 70 D.P.R. 65; *Descartes, Tes.* v. *Tribunal de Contribuciones*, ante, pág. 471. Siendo ello así debemos concluir que erró el tribunal inferior, a base de los hechos que consideró probados y sobre los cuales no hay controversia, en declarar con lugar la querella de la interventora.

*La resolución será revocada y dictada otra declarando la querella sin lugar.*

---

[2] La enmienda de 7 de mayo de 1949 ((1) pág. 615)—Ley núm. 195—aunque no variaría el resultado, no es aplicable a este caso.