SUCESIÓN J. SERRALLÉS, peticionaria, *v.* TRIBUNAL DE CONTRIBUCIONES DE PUERTO RICO, demandado; TESORERO DE PUERTO RICO, interventor.

Núm. 270.—*Sometido:* Enero 9, 1952. *Resuelto:* Enero 22, 1952.

*Vicente Zayas Pizarro,* abogado de la peticionaria; *Hon. Procurador General Víctor Gutiérrez Franqui* y *J. C. Santiago Matos, Procurador General Auxiliar,* abogados del interventor, querellado en el pleito principal.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Conforme se desprende de la querella radicada ante el Tribunal de Contribuciones, la querellante Sucesión J. Serra-

llés es una sociedad civil, agrícola e industrial, y para las fechas a que se refiere la querella poseía, mantenía y funcionaba una planta industrial para la fabricación de azúcar crudo y sus derivados, en el barrio Sabanetas, de Ponce, nombrada Central Mercedita. En 19 de septiembre de 1947 ella importó de Estados Unidos dos romanas conocidas por "railroad truck scales", las cuales utiliza para pesar la caña que llega en camiones y vagones a la central antes de descargarla en la hamaca que conduce la materia prima a los molinos, siendo la instalación de dichas romanas exigidas por la Comisión de Servicio Público de Puerto Rico, por otras agencias del Gobierno Insular y por el Departamento de Agricultura de los Estados Unidos. Dichas romanas intervienen con la materia prima a ser manufacturada en azúcar crudo, desde el comienzo de su manufactura. En 6 de octubre de 1947 la querellante solicitó por escrito del Tesorero de Puerto Rico que la eximiera del pago de arbitrios sobre dichas romanas, por ser las mismas esenciales para el funcionamiento de su planta industrial y en 10 de febrero de 1949 el querellado denegó su solicitud y la requirió de pago, efectuándose el mismo bajo protesta para evitar que se le penalizara, mediante la imposición de recargos, intereses y multas; y que el peso de dichos arbitrios ha sido sufrido realmente por ella.

Negados por el Tesorero los hechos fundamentales alegados por la querellante y celebrado el juicio correspondiente ante el Tribunal de Contribuciones, éste dictó sentencia declarando sin lugar la querella en todas sus partes. Para revisar esa sentencia expedimos un auto de *certiorari* especial. Véase el artículo 6 de la Ley núm. 328 de 13 de mayo de 1949, págs. 997, 1005.

La única cuestión a ser determinada en este recurso, es por tanto, si las dos romanas aludidas están o no exentas del pago de arbitrios. De acuerdo con la sección 16–B de la Ley de Rentas Internas de Puerto Rico—núm. 85 de 20 de agosto de 1925, pág. 585—según fué enmendada

por la Ley núm. 436 de 14 de mayo de 1947, pág. 909,(¹) "Estará exento del pago de los arbitrios impuestos por esta Ley todo aparato, maquinaria o equipo que sea esencial para el establecimiento y funcionamiento de plantas industriales; . . . *Disponiéndose, finalmente,* que por ser ésta una exención que ampara la maquinaria esencial para el establecimiento y funcionamiento de plantas industriales, deberá entenderse aplicable sólo a la maquinaria de la fase fabril productiva del proceso industrial que intervenga con las materias primas desde el comienzo del proceso de manufactura hasta su terminación, incluyendo envase y rotulación del producto; pero no amparará la maquinaria, aparatos, equipo, ni vehículos empleados en la fase administrativa o comercial de la industria; . . ."

La contención de la querellante, naturalmente, es que las dos romanas en cuestión cumplen estrictamente con los requisitos exigidos por la ley para disfrutar de la exención por ser esenciales para el funcionamiento de su planta industrial y por intervenir con la materia prima desde el comienzo del proceso de la manufactura del azúcar hasta su terminación. El Tesorero niega tal aseveración. Admite, sin embargo, que las mismas son esenciales en la fase administrativa del negocio y sostiene que siendo ello así por disposición expresa del estatuto no están exentas del pago de arbitrios.

La prueba ofrecida por la querellante para sostener su contención demuestra que las romanas en cuestión se utilizan para pesar la caña, traída en camiones y vagones de ferrocarril hasta su central antes de pasar a la hamaca que la conduce a los molinos; que dichas romanas intervienen con caña de los colonos; que son esenciales para la eficiencia de la industria en sí; y que el peso de la caña es factor ineludible en el control técnico del proceso a los fines de obtener

---

(¹) La enmienda introducida a esta misma sección por la Ley núm. 166 de 3 de mayo de 1950, pág. 449, no es aplicable a este caso, toda vez que las romanas aquí envueltas fueron importadas en 19 de septiembre de 1947.

los mejores resultados productivos. Dicha prueba admitió, no obstante, que se puede convertir la caña en azúcar sin pesarla y que "es preciso tener el peso de la caña de cada uno (de los colonos) para calcular su participación en el azúcar, porque sin el peso dé la caña de cada vehículo sería imposible calcular qué azúcar pertenece a cuál colono." (Paréntesis nuestro.)

En el caso de *Central Coloso* v. *Tribunal de Contribuciones*, 70 D.P.R. 65, que a nuestro juicio guarda bastante analogía con el presente, el problema envuelto fué si los vagones de ferrocarril que se usan para transportar caña a una central están exentos del pago de arbitrios a tenor con la sección 16–B. Resolvimos en él que de la faz de la ley aparece que la Asamblea Legislativa tuvo por miras limitar la exención a la unidad que constituye la planta industrial y que el proceso industrial no incluye transportación de la materia prima necesaria para dicho proceso.

La sección 16–B es una ley de exención y debe interpretarse restrictivamente. *Tesorero* v. *Tribunal de Contribuciones y Cervecería India*, 71 D.P.R. 512, 516. No sólo es ello así, sino que por disposición expresa de la referida ley la exención no ampara la maquinaria, aparatos, etc., empleados en la fase administrativa o comercial de la industria. Como hemos visto, dichas romanas no se utilizan directamente en el proceso industrial de la querellante sino más bien en su parte administrativa y para aumentar su eficiencia. No intervienen en forma alguna con la conversión de la materia prima desde el comienzo del proceso de elaboración hasta su terminación. Forzoso es, pues, concluir que el Tribunal de Contribuciones no erró al dictar sentencia en la forma en que lo hizo.

*La sentencia recurrida será confirmada.*