CERVECERÍA INDIA, INC., demandante y apelada, *v.* SECRETARIO DE HACIENDA, demandado y apelante.

Número 11701.

*Sometido:* 3 de junio de 1957. *Resuelto:* 21 de abril de 1958.

Hon. Secretario de Justicia, J. B. Fernández Badillo (José Trías Monge, Ex-Secretario de Justicia, en el alegato), y José A. Mayoral, Procurador Auxiliar, abogados del apelante; J. Alemañy Sosa y E. Alemañy Fernández, abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR SALDAÑA emitió la opinión del Tribunal.

La Cervecería India, Inc., importó e instaló en su fábrica ciertos instrumentos (llamados "productimeters") que sirven para contar el número de botellas de cerveza que allí se llenan y el número de botellas de cerveza que finalmente se embalan en cajas. Reclamó exención del pago de arbitrios sobre dicho equipo, pero el Secretario de Hacienda denegó su solicitud y le notificó que procediera al pago de la contribución. Sin pagar los arbitrios ni presentar la correspondiente demanda de reintegro, la contribuyente demandó al Secretario de Hacienda, alegando que los "productimeters" están exentos por las disposiciones de la sec. 16-B de la Ley de Rentas Internas (13 L.P.R.A. sec. 1070) y solicitando una declaración judicial a ese efecto. El Tribunal Superior resolvió que tenía jurisdicción para entender en el caso y que la exención de tributos dispuesta en la citada sec. 16-B era aplicable a los "productimeters". Decretó que ". . . el Secretario de Hacienda se abstendrá de cobrar a la demandante arbitrios sobre el equipo aquí en litigio . . .". Creemos que esa sentencia debe ser revocada porque, tratándose de la imposición y cobro de arbitrios, la contribuyente tenía que pagar éstos en primer lugar y litigarlos después mediante una demanda de reintegro.

■ La sec. 13(a) 2 de la Ley de la Judicatura de 1952 establece en términos generales la competencia del Tribunal Superior en casos contributivos. Dispone que dicho tribunal conocerá ". . . de todo caso, acción, procedimiento o recurso extraordinario relacionado con, o que afecte, la imposición, cobro y pago de toda clase de contribuciones incluyendo contribuciones sobre la propiedad, contribuciones sobre herencias y donaciones, contribuciones sobre ingresos, contribuciones sobre enriquecimiento injusto, contribuciones de seguro social, arbitrios, licencias y cualesquiera otras contribuciones o impuestos, así como de las reclamaciones de contribuciones cobradas por un procedimiento ilegal, o que

voluntariamente o sin notificación del Secretario de Hacienda se hubieran pagado indebidamente o en exceso, cuyo reintegro esté autorizado por ley y haya sido rehusado por el Secretario de Hacienda". 4 L.P.R.A. sec. 121(a) 2. Sin embargo, dicha ley no derogó el procedimiento aplicable en pleitos contributivos ni los requisitos jurisdiccionales que deben cumplirse para que el Tribunal Superior pueda entender en tales pleitos. Así lo indica claramente el informe del comité que redactó la Ley de la Judicatura de 1952. Refiriéndose expresamente a la sec. 13(a) 2 antes transcrita, señala que el alcance de la misma es el siguiente: "La Corte Superior en adelante sustituirá el Tribunal de Contribuciones que antes funcionaba separadamente, el cual queda abolido por esta ley también, como la corte adecuada para ver todas las apelaciones en cortes contra decisiones, resoluciones u órdenes relativas a contribuciones. De esta manera las secs. 1, 2 y 7 a 21 de la Ley núm. 328 del 13 de mayo de 1949 quedan derogadas, en lo que concierne a asuntos de la administración y constitución de dicho tribunal. Sin embargo, el procedimiento aplicable a tales casos y los requisitos para poder el tribunal revisar, al efecto de que debía prestarse una fianza y que debía pagarse totalmente la contribución antes de apelar al Tribunal Supremo, permanecen en vigor como hasta el presente. Todos los casos contributivos deberán radicarse en la Corte Superior, independientemente de la suma en controversia, toda vez que las disposiciones de las secs. 13(a) 5 y 18(a) 2 no son de aplicación a estos asuntos." 4 L.P.R.A. pág. 793.

En suma: la jurisdicción o competencia en asuntos contributivos que concedió la Asamblea Legislativa al Tribunal Superior en 1952 es idéntica a la que tenía el anterior Tribunal de Contribuciones creado por la Ley núm. 328 de 1949. Todas las condiciones impuestas por el Estado al conceder permiso para ser demandado en pleitos contributivos quedaron vigentes después de la aprobación de la Ley de la Judi-

catura de 1952. Ahora bien, ¿cuáles son las que rigen cuando se trata de litigios sobre la procedencia de la imposición y cobro de arbitrios?

■■ Hasta que se creó el primer Tribunal de Contribuciones por la Ley núm. 169 de 15 de mayo de 1943 (Leyes, pág. 601), la única forma de instar un pleito sobre arbitrios era pagándolos *bajo protesta* y demandando al Tesorero para obtener la devolución de los mismos. En efecto, a tenor de la Ley núm. 8 de 19 de abril de 1927 (Leyes, pág. 123) y de la Ley núm. 17 de 21 de noviembre de 1941 (Leyes, Sesión Extr., pág. 55), si el contribuyente creía que no adeudaba ciertos arbitrios y deseaba litigar la cuestión, venía obligado a pagarlos bajo protesta y a consignar al dorso del recibo los motivos de su protesta e impugnación. Dentro del plazo de treinta días a partir de la fecha del pago podía presentar una demanda contra el Tesorero de Puerto Rico en la corte de distrito correspondiente para obtener la devolución de la cantidad protestada. La demanda no podía ser por otra cantidad ni por otros fundamentos que los alegados en su protesta al realizar el pago. Véase *Monge* v. *Tribunal de Contribuciones*, 68 D.P.R 639 (1948).

Después de la aprobación de la Ley núm. 169 de 1943, el contribuyente tenía dos remedios para litigar arbitrios: (1) pagar bajo protesta y demandar el reintegro ante el Tribunal de Contribuciones; y (2) recurrir ante el Tribunal de Contribuciones contra una denegatoria de reintegro del Tesorero. Si se le hacía un requerimiento para que pagara los arbitrios, el contribuyente podía elegir entre los dos remedios; pero si el Tesorero no hacía tal requerimiento, el único remedio disponible era recurrir ante el Tribunal de Contribuciones contra la resolución administrativa del Tesorero denegando el reintegro. En ambos casos era un requisito indispensable pagar los arbitrios antes de poder litigar. Véase *Gerardino* v. *Tribunal de Contribuciones*, 68 D.P.R. 219, 230–231, 235–238 (1948).

En 1949 la Asamblea Legislativa eliminó el primero de los dos procedimientos antes mencionados—*pago bajo protesta y demanda de reintegro*—al derogar la Ley núm. 8 de 1927 en virtud de la Ley núm. 229 de mayo 10 de 1949 (Leyes, pág. 705). En cambio dejó en pie, con carácter exclusivo, el segundo procedimiento para litigar arbitrios, incorporándolo en una ley general que concede el derecho a obtener reintegro o crédito, con intereses, de cualquier clase de contribuciones (incluyendo arbitrios) pagadas o cobradas ilegal o indebidamente, o en exceso de la cantidad debida. Nos referimos a la Ley núm. 232 de mayo 10 de 1949 (Leyes, pág. 721) que todavía está en vigor hoy día. Como es bien sabido, otorga al contribuyente un término de cuatro años desde la fecha del pago de los arbitrios para presentar una solicitud de reintegro ante el Secretario de Hacienda y si la misma fuere denegada total o parcialmente " . . . el contribuyente podrá apelar de dicha denegatoria para ante el Tribunal de Contribuciones de Puerto Rico (hoy Tribunal Superior) en la forma, dentro del término y previo cumplimiento de los requisitos provistos por ley". 13 L.P.R.A. sec. 261.

Simultáneamente se estableció un procedimiento uniforme para recurrir al Tribunal de Contribuciones (hoy Tribunal Superior) por la Ley núm. 235 de 10 de mayo de 1949 (Leyes pág. 733). El propósito de esta ley fué reglamentar en forma exhaustiva y coherente los distintos recursos que los contribuyentes pueden interponer ante dicho tribunal. El art. 2 (13 L.P.R.A. sec. 282) dispone el trámite preciso para apelar de cualquier determinación hecha por el Secretario de Hacienda en relación con (1) contribución sobre ingresos; (2) contribución sobre enriquecimiento injusto; (3) contribución sobre la propiedad; (4) contribución sobre herencias y donaciones; (5) contribución sobre seguro social; y por último (6) reintegro de contribuciones. ¿Por qué no se hace referencia alguna a los casos de arbitrios? A nuestro juicio sólo cabe una contestación: porque el único

procedimiento que existe para litigar arbitrios es mediante la revisión de una determinación del Secretario de Hacienda negándose a conceder una solicitud de reintegro de los mismos al amparo de la Ley núm. 232 de 1949. Así pues, el sexto recurso mencionado en el citado art. 2, bajo el título de "reintegro de contribuciones", basta para incluir todos los casos de arbitrios. (¹)

Las disposiciones del art. 2 que acabamos de analizar concuerdan con lo dispuesto en el art. 3 de la Ley núm. 328 de 13 de mayo de 1949 que creó el segundo Tribunal de Contribuciones de Puerto Rico. 13 L.P.R.A. sec. 286. El citado art. 3 fija un término uniforme de treinta días para presentar cualquier demanda ante el Tribunal de Contribuciones (hoy Tribunal Superior) a partir de la fecha de la notifica-

---

(¹) El art. 2 de la Ley núm. 235 de 1949 dispone en lo pertinente como sigue:

"Recursos de los contribuyentes:

"A.—Apelación de las Determinaciones del Secretario de Hacienda. —Cuando un contribuyente no estuviere conforme con una determinación notificádale por el Secretario de Hacienda y tuviere derecho por ley a apelar de ella para ante el Tribunal Superior, deberá hacerlo en la forma, dentro del término y previo el cumplimiento de los requisitos siguientes:

"1. Contribución sobre Ingresos
". . . . . . . .
"2. Contribución sobre Enriquecimiento Injusto
". . . . . . . .
"3. Contribución sobre la Propiedad
". . . . . . . .
"4. Contribución sobre Herencias y Donaciones
". . . . . . . .
"5. Contribución sobre Seguro Social
". . . . . . . .
"6. Reintegro de Contribuciones—De una determinación del Secretario de Hacienda negándose a conceder el reintegro de cualquier contribución, radicando su demanda en el Tribunal Superior en la forma dispuesta por las secs. 286 a 289 de este título, dentro del término de treinta (30) días a partir de la fecha del depósito en el correo de la notificación del Secretario de Hacienda denegando el reintegro solicitado, término que se considerará de carácter jurisdiccional.

"B.—Otros Recursos de los Contribuyentes.—Los recursos especiales o extraordinarios que tengan derecho a interponer los contribuyentes en relación con cualquier contribución, se tramitarán ante el Tribunal Superior de acuerdo con las leyes aplicables a los mismos."

ción que haga el Secretario de Hacienda a la persona o entidad recurrente ". . . en cualquiera de los siguientes casos: (1) contribuciones sobre propiedad mueble o inmueble; (2) contribuciones sobre herencias o donaciones; (3) contribuciones sobre ingresos; (4) contribuciones sobre enriquecimiento injusto; (5) contribución de seguro social; (6) denegatoria de reintegros autorizados por ley, de cualquier clase de contribución pagada indebidamente o en exceso o cobrada ilegalmente por cualquier otra causa". Es obvio que aquí tampoco se hace referencia alguna a los casos de arbitrios. Y la razón es la que hemos señalado anteriormente: la sexta categoría de casos ("denegatoria de reintegros autorizados por ley") incluye necesariamente todos los casos de arbitrios. El contribuyente siempre tiene que pagarlos antes de litigar.

■ Importa señalar además que desde 1945 la ley sólo permite acudir en apelación contra una denegatoria de reintegro de arbitrios a la persona o entidad que realmente haya sufrido el peso de pagar los mismos, y que "una alegación en tal sentido y la prueba de la misma en su oportunidad, serán considerados como requisitos jurisdiccionales". La Ley núm. 137 de 9 de mayo de 1945 (Leyes, pág. 463) estableció dichas condiciones específicamente para los reintegros de arbitrios o contribuciones de licencia. Véase *Standard Comm. Tob. Co., Inc.* v. *Tribunal de Contribuciones*, 71 D.P.R. 749 (1950). Después se hicieron aplicables al reintegro de toda clase de contribuciones, al aprobarse el art. 2 de la Ley núm. 328 de 13 de mayo de 1949, y aún permanecen en vigor ya que la sec. 13 (a) 2 de la Ley de la Judicatura de 1952 no deroga ninguno de los requisitos fijados por leyes anteriores para que el Tribunal Superior pueda entender en casos contributivos. El origen de estos "requisitos jurisdiccionales" y su vigencia en la actualidad demuestran que es preciso pagar los arbitrios antes de poder litigar la cuestión de si se adeudan o no.

En todos los casos en que se permite al contribuyente litigar una contribución sin pagarla antes, la Asamblea Legislativa de Puerto Rico ha impuesto condiciones para garantizar el pago de la contribución y para asegurar la eficiente recaudación de los tributos. El gobierno siempre ha tratado de impedir que los litigios contributivos se conviertan en un obstáculo que impida obtener los ingresos contributivos que son necesarios para su funcionamiento. Respecto a las contribuciones sobre ingresos, se exige normalmente la prestación de una fianza como requisito previo para recurrir ante el Tribunal Superior contra una determinación final de deficiencia. Y si se apela de una sentencia del Tribunal Superior determinando una deficiencia de contribución sobre ingresos, se exige normalmente el pago de la totalidad de la deficiencia como condición previa para que el Tribunal Supremo pueda conocer de la apelación en sus méritos. 13 L.P.R.A. Sup. Acum. (1957) sec. 3272. En el caso de las contribuciones sobre la propiedad, es preciso pagar la parte de las mismas con la cual se estuviere conforme y además existe un gravamen preferente sobre la propiedad a favor del Estado. En cuanto a las contribuciones sobre herencias y donaciones también se impone un gravamen preferente y en adición se prohíbe, excepto con el fin de allegar fondos suficientes para el pago de las contribuciones, toda enajenación de los bienes relictos hasta que se haya acreditado debidamente el pago de las mismas. Nótese que en los casos relacionados con arbitrios la ley no exige fianza alguna para litigar ante el Tribunal Superior. Tampoco impone otras *condiciones para litigar* que garanticen la recaudación eficiente y ordenada de esos impuestos. Es lógico por tanto que sólo se permita recurrir en casos de arbitrios al procedimiento de reintegro.

*Refiriéndose a toda clase de contribuciones*, el art. 3 de la Ley núm. 328 de 1949 establece que " . . . la radicación de la demanda ante el Tribunal Superior no afectará ni

menoscabará el derecho del Secretario de Hacienda a hacer efectiva la contribución por los procedimientos autorizados por ley, a menos que el Tribunal Superior, a solicitud del contribuyente y con citación del Secretario de Hacienda, suspenda el cobro de la contribución en litigio, mediante el afianzamiento, a su entera satisfacción de la contribución en controversia, incluyendo intereses y penalidades . . ." Dispone dicho artículo que ". . . la autorización para prestar esta fianza, así como la fijación de su cuantía, serán facultad discrecional y exclusiva del Tribunal, teniendo en cuenta, en cada caso, los hechos y circunstancias que a su juicio concurran y afecten el interés, tanto del contribuyente, como del Estado Libre Asociado de Puerto Rico." 13 L.P.R.A. sec. 286. Pero a nuestro entender, la Asamblea Legislativa consideró que estas disposiciones no bastan para proteger al erario público contra el riesgo de que surja una multiplicidad de pleitos contributivos que impidan la recaudación eficiente y ordenada de los tributos. Así lo demuestra el hecho de que, a pesar de lo dispuesto en el referido art. 3, aún se mantiene en vigor hoy día *como requisito jurisdiccional previo* la prestación de una fianza en los pleitos de contribuciones sobre ingresos, salvo en ciertos casos excepcionales. 13 L.P.R.A. Sup. Acum. (1957) sec. 3272. Sin duda, mediante embargo o amenaza de embargo, el Secretario de Hacienda podría teóricamente obligar a cada litigante, en cada caso, a prestar una fianza. Pero en la práctica esto aparejaría una labor administrativa que difícilmente podría llevarse a cabo. Y no podemos olvidar que en Puerto Rico casi una tercera parte del total de los ingresos contributivos del gobierno proceden de recaudaciones por concepto de arbitrios.(2)

---

(2) Véanse: Resumen del Presupuesto, Año Fiscal 1957, pág. 2, y Resumen del Presupuesto, Año Fiscal 1958, pág. 2 (ambos publicados por el Negociado del Presupuesto del Estado Libre Asociado de Puerto Rico). Además véase el Informe Económico al Gobernador (1957), págs. 31–32, publicado por el Negociado de Economía y Estadísticas de la Junta de Planificación.

No existe disposición de ley alguna que permita establecer una excepción para el caso en que se alegue que el artículo sobre el cual se cobran los arbitrios está exento de toda contribución. En *Cafeteros de Puerto Rico* v. *Tesorero*, 74 D.P.R. 752 (1953), resolvimos que el remedio adecuado para obtener una decisión judicial en cuanto a la procedencia de la imposición y cobro de ciertos arbitrios era el pago de la contribución, seguido de una reclamación de reintegro, a pesar de que la demandante alegó que no era una contribuyente sujeta al ámbito de la ley. Debemos repetir ahora lo que allí apuntamos: ". . . toda reclamación de ilegalidad de una contribución envuelve una alegación de que, en cuanto a cierta cuantía o en cuanto a ciertas partidas, por lo menos, la reclamante no es una contribuyente. Toda alegación de exención, por ejemplo, envuelve una contención de que determinada ley no es aplicable a un demandante." (Pág. 765.) Esto no tiene nada de extraño. De hecho, en Puerto Rico siempre se ha utilizado el procedimiento de reintegro en casos en que el contribuyente sostiene que no adeuda los arbitrios por razón de una exención. Véanse *Central Coloso* v. *Tribunal de Contribuciones*, 70 D.P.R. 65 (1949); *Descartes* v. *Tribunal de Contribuciones y Sucesión Serrallés*, 71 D.P.R. 471 (1950); *Cervecería India, Inc.* v. *Tribunal de Contribuciones*, 71 D.P.R. 496 (1950); *Descartes* v. *Tribunal de Contribuciones y Cervecería India, Inc.*, 71 D.P.R. 512 (1950); *Pedro A. Pizá, Inc.* v. *Tribunal de Contribuciones*, 72 D.P.R. 320 (1951); *Sucn. Serrallés* v. *Tribunal de Contribuciones*, 73 D.P.R. 35 (1952); *Francis* v. *Tribunal de Contribuciones*, 74 D.P.R. 19 (1952); *Fajardo Sugar Company* v. *Secretario de Hacienda*, 76 D.P.R. 856 (1954); *Descartes* v. *Tribunal de Contribuciones*, 78 D.P.R. 90 (1955); y *Capó* v. *Tribunal de Contribuciones*, 78 D.P.R. 934 (1956).

*La sentencia apelada será revocada y en su lugar se dictará otra declarando sin lugar la demanda por falta de jurisdicción.*

El Juez Asociado señor Pérez Pimentel disintió en cuanto al punto de jurisdicción y concurre en el resultado, por motivos diferentes que expresa en opinión separada.

El Juez Asociado señor Santana Becerra no intervino.

---

Opinión separada emitida por el JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL.

Disiento en cuanto al punto de jurisdicción por las razones que consigno a continuación:

Se trata de una apelación contra una sentencia del Tribunal Superior decretando que unos ocho "productimeters" que fueron importados por la Cervecería India, Inc., e instalados en su fábrica de cerveza con el fin de contar el número de botellas de cerveza que se llenan y el número de botellas de cerveza que finalmente se envasan en cajas, estaban exentos del pago de arbitrios por las disposiciones de la sec. 16-B de la Ley de Rentas Internas y el art. 4 (*a*) del Reglamento núm. 69 sobre arbitrios.

Por el segundo error, el demandado y apelante, Secretario de Hacienda, ataca la jurisdicción del tribunal sentenciador para entender en el caso. Arguye que el contribuyente no cumplió con el requisito jurisdiccional de pagar primero los arbitrios para litigar después. ([1])

---

([1]) El apelante se apoya principalmente en los casos de *Descartes, Tesorero* v. *Tribl. de Contribuciones y Trigo Hnos.*, 73 D.P.R. 295 y *Cafeteros de Puerto Rico* v. *Tesorero*, 74 D.P.R. 752. En este último caso resolvimos que en materia de contribuciones, no procede un remedio en equidad, especialmente el de *injunction*, si el supuesto contribuyente tiene a su alcance un remedio adecuado en el curso ordinario de la ley, tal cual era el pago de la contribución, seguido por una reclamación de reintegro formulada en el anterior Tribunal de Contribuciones. Se trataba en ese caso de una demanda interpuesta ante los tribunales ordinarios, que bien podía considerarse como una acción de injunction o una sobre sentencia declaratoria. La demanda fué desestimada porque la contribuyente tenía un remedio adecuado en el curso ordinario de la ley. Sin embargo, los hechos en el presente caso son distintos y ni en el caso de *Cafeteros de Puerto Rico*, ni en el de *Trigo Hnos.*, por razones obvias, se discutió la cuestión que está ahora ante nos. Por los fundamentos que aducimos en el curso de esta opinión, los citados casos son inaplicables al de autos.

No tiene razón. La vigente Ley de la Judicatura (4. L.P.R.A. sec. 1) al definir la competencia del Tribunal Superior, le dió facultad para conocer, entre otros asuntos, de "todo caso, acción, procedimiento o recurso extraordinario relacionado con, o que afecte, la imposición, cobro y pago de toda clase de contribuciones incluyendo . . . arbitrios y cualesquiera otras contribuciones cobradas por un procedimiento ilegal, o que voluntariamente o sin notificación del Secretario de Hacienda se hubieran pagado indebidamente o en exceso, cuyo reintegro esté autorizado por ley y haya sido rehusado por el Secretario de Hacienda". De suerte que además de concederle competencia para conocer de todo caso, acción, procedimiento o recurso extraordinario *relacionado con, o que afecte*, la imposición, cobro y pago de arbitrios, la ley le concedió competencia por separado al Tribunal Superior para conocer de reclamaciones de reintegro negados por el Secretario de Hacienda. (²)  Esta competencia la ejercita el Tribunal Superior sujeta a los procedimientos establecidos al aprobarse la mencionada Ley de la Judicatura, los cuales continuaron en vigor en virtud de la cláusula

---

(²) El art. IV, sec. 13, de la Ley de la Judicatura dispone en lo pertinente:

"Sección 13.—El Tribunal Superior conocerá de los siguientes asuntos:

"*a*) En lo civil:

"1. .

"2. De todo caso, acción, procedimiento o recurso extraordinario relacionado con, o que afecte, la imposición, cobro y pago de toda clase de contribuciones incluyendo contribuciones sobre la propiedad, contribuciones sobre herencia y donaciones, contribuciones sobre ingresos, contribuciones sobre enriquecimiento injusto, contribuciones de seguro social, arbitrios, licencias y cualesquiera otras contribuciones o impuestos, así como de las reclamaciones de contribuciones cobradas por un procedimiento ilegal, o que voluntariamente o sin notificación del Secretario de Hacienda se hubieran pagado indebidamente o en exceso, cuyo reintegro esté autorizado por ley y haya sido rehusado por el Secretario de Hacienda."

de reserva contenida en la sec. 2, art. 1 de la referida ley. (³)
La Ley núm. 235 de 10 de mayo de 1949—Leyes de Puerto
Rico de 1949, pág. 733—estableció el procedimiento para
recurrir ante el anterior Tribunal de Contribuciones contra
las determinaciones del Tesorero de Puerto Rico en materia
de contribuciones sobre Ingresos, Enriquecimiento Injusto,
Propiedad, Herencias y Donaciones, Seguro Social y Reinte-
gro de Contribuciones, disponiendo el cumplimiento de ciertos
requisitos para que el tribunal pudiera asumir jurisdicción
en el asunto. Sin embargo, por disposición expresa de la
propia ley, la misma "no será interpretada en el sentido de
extender o limitar la jurisdicción o competencia del Tribunal
de Contribuciones de Puerto Rico, ni los derechos concedidos
u obligaciones impuestas por la ley a los contribuyentes, al
Pueblo de Puerto Rico, o a los funcionarios del Pueblo de
Puerto Rico". Y por la Ley núm. 328, aprobada el 13 de
mayo de 1949—Leyes de Puerto Rico de 1949, pág. 997—
se concedió al Tribunal de Contribuciones de Puerto Rico
una jurisdicción similar a la del actual Tribunal Superior en
materia contributiva. Específicamente se concedió jurisdic-
ción de carácter exclusivo al referido Tribunal de Contribu-
ciones para conocer de todos los casos, acciones, procedimien-
tos o recursos especiales o extraordinarios relacionados con,
o que afecten, la imposición, cobro y pago de toda clase de
contribuciones, incluyendo arbitrios. Art. 2, Ley núm. 328
de 1949. Esta ley disponía además que no podría invocarse
la jurisdicción ante el tribunal por persona alguna hasta
que sobre el asunto en discusión hubiere recaído la corres-
pondiente resolución administrativa por parte del Tesorero,
de acuerdo con la ley. Y en lo que a reintegros de contri-
buciones y arbitrios respecta, dispuso que sólo podía acudir

---

(³) Dicha cláusula de reserva lee:
"Toda disposición estatutaria o de. reglamentación existente en la
actualidad, sobre procedimiento civil y criminal y de evidencia, perma-
necerá en vigor hasta que la misma sea modificada, suplementada o
enmendada por el Tribunal Supremo de acuerdo con la Constitución del
Estado Libre Asociado de Puerto Rico." (4 L.P.R.A. sec. 2.)

en apelación ante el tribunal la persona que hubiere sufrido el peso del pago de la contribución o arbitrio y que tanto una alegación a ese efecto, como la prueba sobre la misma, se consideraban como requisitos jurisdiccionales.

En ninguna de las leyes que hemos venido examinando se establece como requisito jurisdiccional, el previo pago del arbitrio cuando en un caso como el presente, el contribuyente alega que la maquinaria sobre la cual se cobra el arbitrio está exenta de su pago por disposición de ley.(⁴) El apelante apunta el peligro de que de permitirse a un contribuyente litigar una supuesta exención de contribuciones sin antes efectuar el pago de la misma, crearía una gran incertidumbre al erario público. Admite, sin embargo, que existen casos en que se permite litigar sin antes pagarse la contribución que se ha impuesto, pero arguye que en tales casos el legislador ha impuesto, o existen de hecho, condiciones que garantizan el pago de la contribución. Así, por ejemplo, en el caso de la contribución sobre ingresos se ha exigido la prestación de una fianza, en el caso de contribución sobre la propiedad la propiedad misma constituye una garantía porque existe un gravamen preferente a favor del Estado y en el caso de contribución sobre herencia existe el gravamen preferente y, además, la prohibición de enajenar los bienes relictos sin antes haberse acreditado el pago de la contribución. Sostiene además, que en los casos relacionados con arbitrios no existe garantía alguna, si no se pagan primero y se litiga después. En esto último no estamos conformes. Estimamos que las disposiciones contenidas en el art. 3 de la Ley 328 de 1949, son de carácter procesal y que por virtud de la cláusula de reserva de la Ley de la Judicatura, a que ya nos hemos referido, continúan en vigor. Dicho artículo dispuso que "la radicación de la demanda ante el Tribunal de Contribuciones no afectará ni menoscabará el derecho del Tesorero de Puerto Rico a hacer efectiva la con-

(⁴)Véase *Descartes, Tes.* v. *Tribl. de Contribuciones y Cerra, Int.,* 74 D.P.R. 567.

tribución por los procedimientos autorizados por ley, a menos que el Tribunal de Contribuciones, a solicitud del contribuyente y con citación del Tesorero de Puerto Rico, suspenda el cobro de la contribución en litigio, mediante el afianzamiento, a su entera satisfacción, de la contribución en controversia, incluyendo intereses y penalidades". Dispuso además dicho artículo, que "la autorización para prestar esta fianza, así como la fijación de su cuantía, serán facultad discrecional y exclusiva del Tribunal teniendo en cuenta, en cada caso, los hechos y circunstancias que a su juicio concurran y afecten el interés, tanto del contribuyente como de El Pueblo de Puerto Rico".

De suerte que ante estas disposiciones procesales se desvanece el peligro que apunta el apelante ya que (1) la radicación de la demanda en este caso no impedía al Secretario de Hacienda proceder al cobro de los arbitrios por los procedimientos autorizados por ley, y (2) el tribunal a quo tenía discreción para suspender el cobro de dichos arbitrios si a su juicio con ello no se afectaba el interés del Estado Libre Asociado, y siempre mediante afianzamiento, cosa que elimina el peligro de la falta de garantía.

Por otro lado, no sería del todo correcto afirmar, que el cobro de arbitrios está huérfano de las garantías que existen por ley para el cobro de otras clases de contribuciones. Los *fabricantes* de artículos tributables vienen obligados a prestar una fianza a favor del Estado Libre Asociado de Puerto Rico para responder del pago de las contribuciones y de las penalidades. Los *traficantes* que tengan en su poder artículos tributables sobre los cuales no hayan sido satisfechos los impuestos, vienen obligados igualmente a prestar una fianza similar. 13 L.P.R.A. sec. 4070. En el caso de artículos introducidos en Puerto Rico por otros medios que no sean el correo o personalmente, el arbitrio debe pagarse antes de tomar posesión del artículo el contribuyente. 13 L.P.R.A., sec. 4060. A estos fines el Secretario de Hacienda está facultado para autorizar y reglamentar el

establecimiento de almacenes de adeudo públicos o privados para ser utilizados exclusivamente en el almacenamiento de aquellos artículos gravados por la ley y sobre los cuales no se haya pagado el impuesto. 13 L.P.R.A., secs. 4071 y 4077 (*i*). Además ningún porteador marítimo, aéreo o terrestre, ni ningún almacenista, o depositario que tenga bajo su custodia artículos tributables, podrá entregar la mercancía al consignatario o persona que propiamente la reclame, a menos que se le presente una certificación del Secretario de Hacienda autorizando la entrega de dicha mercancía. Cualquiera de ellos que viole esa disposición incurre en delito y además viene obligado al pago del impuesto correspondiente a dicha mercancía, incluyendo recargos, intereses, multas administrativas, etc. 13 L.P.R.A., sec. 4071. En cuanto a los automóviles que se introduzcan en Puerto Rico existe la garantía adicional de la no expedición de una licencia o tablilla a menos que se acredite el pago del impuesto. 13 L.P.R.A., sec. 4075 (*b*). Respecto a transacciones tributables, tales como espectáculos públicos, ganancias obtenidas en *pools*, bancas, etc. y en cualesquiera otras jugadas que se efectúen en sitios donde se celebren carreras de caballos, la ley provee agentes retenedores para asegurar el pago de la contribución. 13 L.P.R.A., sec. 4061. En cuanto a las ocupaciones sujetas a licencia, es obvio que a no mediar el previo pago del impuesto, no se expiden dichas licencias. Quedan los artículos introducidos por correo o personalmente. No existe en estos casos una garantía como en los demás casos señalados anteriormente. Sin embargo, si los contribuyentes se niegan a pagar los impuestos correspondientes sobre los mismos, el Secretario de Hacienda no tiene otro remedio que el de proceder, mediante los procedimientos provistos por ley a su cobro embargando sumariamente o en otra forma, bienes del contribuyente. Esto desde luego, no se lo impide al Secretario de Hacienda, el hecho de que el contribuyente haya incoado en el tribunal un procedimiento atacando la validez del cobro del arbitrio. Ade-

más, no es la mayoría, ni siquiera un número sustancial de los contribuyentes que recurren a los tribunales para litigar la validez o legalidad de los impuestos cobrados por el Secretario de Hacienda.

La opinión de mayoría sostiene que por la Ley núm. 235 de 10 de mayo de 1949 se estableció un procedimiento uniforme para recurrir al Tribunal de Contribuciones (hoy Tribunal Superior) y que el propósito de esa ley fué reglamentar en forma exhaustiva y coherente los distintos recursos que los contribuyentes puedan interponer ante dicho tribunal. Concluye que como nada se estableció en dicha ley en relación con los casos de arbitrios, el único procedimiento para litigar éstos, es de pagar y solicitar el reintegro y acudir al tribunal en caso de una denegatoria. Por fíat judicial la opinión de mayoría, limita los procedimientos y recursos de los contribuyentes a los expresamente establecidos en dicha Ley núm. 235. En esta forma limita la jurisdicción o competencia del Tribunal de Contribuciones (hoy Tribunal Superior) haciendo caso omiso de las propias disposiciones de la Ley 235 que preceptúa que dicha ley "no será interpretada en el sentido de extender o limitar la jurisdicción o competencia del Tribunal de Contribuciones de Puerto Rico, . . . . ." Y como ya hemos visto a este Tribunal se le concedió por Ley núm. 328 de 13 de mayo de 1949, jurisdicción para conocer de todos los casos, acciones, procedimientos o recursos especiales o extraordinarios relacionados con, o que afecten, la imposición, cobro y pago de toda clase de contribuciones, incluyendo arbitrios. De suerte que la jurisdicción o competencia del Tribunal de Contribuciones (hoy Tribunal Superior) no queda limitada, como sostiene la mayoría, a los procedimientos o recursos, que no son en verdad tan exhaustivos como se alega, señalados en la Ley núm. 235. Si fuera como sostiene la mayoría, cabría preguntar, como uno de tantos ejemplos, ¿qué remedio tiene el contribuyente y qué procedimiento señala la ley para recurrir al tribunal cuando el Secretario de Hacienda injus-

tificadamente se niega a reconocer el establecimiento de un fondo de reposición?   Precisamente resolviendo una controversia sobre un fondo de reposición rechazamos la doctrina que ahora adopta la mayoría en *Descartes, Tes.* v. *Tribl. Contribuciones y Cerra, Int.*, 74 D.P.R. 567.

En cuanto a los casos que se citan en la opinión de mayoría para demostrar que de hecho en Puerto Rico siempre se ha utilizado el procedimiento de reintegro cuando el contribuyente ha alegado una exención contributiva, bastará decir que la selección por el contribuyente de ese procedimiento no establece la ley y que además los contribuyentes deben saber que su negativa a pagar los arbitrios y la interposición de una demanda sobre reclamación de exención, no impiden al Secretario de Hacienda proceder al cobro de los arbitrios mediante los procedimientos establecidos por ley. Quizás por esa razón, los litigantes en los mencionados casos, prefirieron pagar y luego solicitar el reintegro.

Consideramos en su consecuencia, que el Tribunal Superior tenía competencia y jurisdicción para conocer de este caso.   Sin embargo, estudiado el caso en sus méritos opinamos que la sentencia apelada debe ser revocada.   Veamos.

Sostiene el apelante que el tribunal sentenciador cometió error al decidir que la maquinaria introducida en Puerto Rico por la demandante-apelada está amparada por la exención contributiva establecida por la sec. 16-B de la Ley de Rentas Internas y al decidir que la sec. 4 (*a*) del Reglamento 69 sobre arbitrios era aplicable a dicha maquinaria.

Tiene razón.   La sec. 16-B de la Ley de Rentas Internas (13 L.P.R.A., sec. 1070) proveía a la fecha en que se introdujo la maquinaria o equipo en Puerto Rico, lo siguiente:

"Estará exento del pago de los arbitrios impuestos por esta ley todo aparato, maquinaria o equipo que sea esencial para el establecimiento y funcionamiento de plantas industriales; . . . *Disponiéndose, asimismo,* que por ser ésta una exención que ampara la maquinaria esencial para el establecimiento de plan-

tas industriales, deberá entenderse aplicable sólo a la maquinaria de la fase fabril productiva del proceso industrial que intervenga con las materias primas desde el comienzo del proceso de manufactura hasta su terminación, pero incluyendo además la maquinaria, camiones o montacargas (*hoisting units*) que se utilicen exclusiva y permanentemente en la conducción de materia prima y artículos semielaborados dentro del circuito (*premises*) de la planta industrial así como el equipo que se emplee en el envase, rotulación del producto y en la preservación de éste o de la materia prima en caso de artículos perecederos; pero no amparará la maquinaria, aparatos, equipo, ni vehículos empleados en la fase administrativa, distributiva o comercial de la industria; . . ."

Al instrumentar la anterior disposición, el Reglamento núm. 69 sobre Arbitrios, en su art. 4(*a*) dispuso:

"Artículo 4.—Se considerarán amparados por la exención:
"*a*. Aquellos instrumentos mecánicos de precisión destinados al control físico de la producción fabril, incluyendo las básculas, romanas, pesas, calibradores, y cualesquiera otros instrumentos que se usen, bien para graduar las proporciones de las materias primas a elaborar, como para pesar, contar, o medir en otra forma, el producto terminado, al ensacarlo o envasarlo."

La cuestión a determinar es si los "productimeters" introducidos en Puerto Rico e instalados por la demandante-apelada en su fábrica de cerveza es un equipo "que se emplee en el envase, rotulación del producto y en la preservación de éste en caso de artículo perecedero", en cuyo caso estarían exentos del pago de los arbitrios.

El texto de la sec. 16-B de la Ley de Rentas Internas es claro en el sentido de que la maquinaria y equipo exentos es aquella que sea *esencial* para el establecimiento y funcionamiento de plantas industriales y que la exención es aplicable sólo a la maquinaria de la fase fabril productiva del proceso industrial que intervenga con las materias primas desde el comienzo del proceso de manufactura hasta su terminación. Por disposición expresa de dicha sección se in-

cluye además, en la exención, la maquinaria, camiones o montacargas (*hoisting units*) que se utilicen exclusiva y permanentemente en la conducción de materia prima y artículos semielaborados dentro del circuito (premises) de la planta industrial, así como *el equipo que se emplee en el envase, rotulación del producto* y en la preservación de éste o de la materia prima en caso de artículos perecederos; *"pero no amparará"* —dice la ley— *"la maquinaria,* aparatos, equipo, ni vehículos *empleados en la fase administrativa, distributiva o comercial de la industria."* (Bastardillas nuestras.)

La función de los referidos "productimeters" es la "de contar el número de botellas de cerveza que se llenan y el número de botellas que finalmente se envasen." Resulta claro que dicho equipo no se emplea en el envase del producto, pues su fin es precisamente el de *contar* las botellas que se llenan, o sea, no interviene dicho equipo con el envase en sí del producto (cerveza) en botellas, sino que es un equipo independiente que se utiliza para contar las botellas donde el producto es envasado. En cuanto a la rotulación del producto, el equipo ("productimeters") no tiene intervención ni relación alguna.

Reiteradamente hemos dicho que las leyes concediendo exenciones contributivas deben ser interpretadas restrictivamente. *Emmanuelli* v. *Sec. de Hacienda,* 76 D.P.R. 950; *Flax* v. *Tesorero,* 76 D.P.R. 390; *School of Commerce* v. *Tribl. Contribuciones,* 77 D.P.R. 875; *Bacardí Corporation* v. *Tribl. Contribuciones,* 75 D.P.R. 131; *Descartes* v. *Tribl. de Contribuciones y Franco,* 73 D.P.R. 890; *Wood* v. *Tribl. de Contribuciones y Tesorero,* 71 D.P.R. 233. Cuando existe duda en cuanto a si la ley concede o no una exención, la duda se resuelve en contra de la exención. *Francis* v. *Tribl. de Cintribuciones y Tesorero,* 74 D.P.R. 19. Esta doctrina la aplicamos específicamente a la sec. 16-B de la Ley de Rentas Internas, según fué enmendada por la Ley núm. 436 de 1947, en *Sucn. Serrallés* v. *Tribl. Contribuciones,* 73 D.P.R.

35. También dimos a dicha sección una interpretación restrictiva al resolver que un equipo usado para estibar azúcar ya elaborada no estaba amparado por la exención concedida por la sec. 16-B. *Fajardo Sugar Co.* v. *Sec. de Hacienda,* 76 D.P.R. 856.

El equipo envuelto en el caso de autos se usa o emplea en la fase administrativa de la industria de la apelante. Por tanto, la sec. 16-B de la Ley de Rentas Internas no la exime del pago de los arbitrios. Ahora bien, tampoco el Reglamento núm. 69 sobre Arbitrios ampara la exención reclamada por la apelada. De acuerdo con el art. 4 de dicho Reglamento se consideran amparados por la exención aquellos "instrumentos mecánicos de precisión destinados al *control físico* de la producción fabril, incluyendo las básculas . . . , y cualesquiera otros instrumentos que se usen, bien para graduar las proporciones de las materias primas a elaborar, como para pesar, *contar,* o medir en otra forma, el producto terminado, *al ensacarlo o envasarlo."* (Bastardillas nuestras.)

Los "productimeters" no se usan para *contar* el producto terminado (cerveza) al envasarlo. Las propias botellas constituyen la medida física exacta que utiliza la demandante-apelada al envasar su producto. Los "productimeters" cuentan las botellas que se llenan, pero no controlan la cantidad de cerveza que se envasa en las botellas. Si interpretáramos el Reglamento en el sentido de incluir en la exención el equipo usado para contar las botellas que se llenan, tendríamos que concluir que dicho Reglamento concede una exención no establecida por la ley, ya que según ésta la exención ampara al equipo que se emplee en el envase, rotulación del producto y en la preservación de éste o de la materia prima en caso de artículos perecederos. Ya hemos dicho que los "productimeters" no se emplean en el envase ni en la rotulación del producto. Y sabido es que los reglamentos, para ser válidos, no pueden estar en conflicto con las normas establecidas en la ley. De estarlo, son nulos.

*Descartes* v. *Tribl. de Contribuciones y Sucn. Serrallés*, 71 D.P.R. 471; *Chabrán* v. *Bull Insular Line*, 69 D.P.R. 269; *Buscaglia, Tes.* v. *Tribl. de Contribuciones*, 67 D.P.R. 57; *Ex parte Irizarry*, 66 D.P.R. 672; *Villa* v. *Comisión Industrial*, 65 D.P.R. 562; *Alemañy* v. *Comisión Industrial*, 64 D.P.R. 888; *Pueblo* v. *Bou*, 64 D.P.R. 466; *Colón* v. *Tugwell, Gobernador*, 65 D.P.R. 924.

Por las razones expuestas, debería revocarse la sentencia apelada y dictarse otra declarando sin lugar la demanda.