CAFETEROS DE PUERTO RICO, demandante y apelante, *v.* TESORERO DE PUERTO RICO, demandado y apelado.

Núm. 10749.
*Sometido:* 4 de marzo de 1953. *Resuelto:* 22 de abril de 1953.

*Erasto Arjona Siaca,* abogado de la apelante; *Hon. Secretario de Justicia Interino J. B. Fernández Badillo* y *Manuel J. Medina Aymat, Procurador Auxiliar,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del tribunal.

Con el propósito de proteger y lograr el bienestar de la industria cafetalera de Puerto Rico, la Asamblea Legislativa aprobó, el 15 de mayo de 1936, la Ley núm. 116 de ese año ((1) pág. 679), cuya sección 3 disponía lo siguiente:

"El Tesorero de Puerto Rico queda por la presente autorizado para, y se le ordena que, a partir de la cosecha de 1936 al 1937 y en los años sucesivos, imponga una contribución especial de un cuarto de centavo por cada libra de café crudo que se venda en Puerto Rico; *Disponiéndose,* que esta contribución sólo podrá cobrarse una vez cada año en el momento de efectuarse la primera venta, entendiéndose por 'primera venta', la efectuada por el agricultor a cualquier comerciante, traficante, manipulador, asociación cooperativa, torrefactor de café o cualquiera otra persona natural o jurídica; quedando el comprador obligado a pagar la citada contribución al Tesorero de Puerto Rico en la forma que éste prescriba en el reglamento que dictará al efecto. La contribución que por la presente se impone se considerará como un gravamen preferente sobre cualquier propiedad mueble o inmueble que poseyere el comprador de café. El Tesorero de Puerto Rico queda facultado además para dictar las reglas y reglamentos que fueren necesarios para la recaudación de dicha contribución incluyendo multas administrativas, y estas reglas y reglamentos tendrán fuerza de ley."

Con el producto de tal contribución especial, que, como hemos visto era pagadera por los compradores de café al efectuarse la primera venta, se estableció un fondo especial que se invertía en llevar a cabo una campaña de anuncio de nuestro café en Estados Unidos y Europa.

La demandante y apelante es una asociación cooperativa de agricultores y cosecheros de café que se dedica a recibir en depósito el café producido por sus miembros, procesar el café, parcialmente a través de la torrefacción y pilado del café en grano, y a vender el café a compradores, entregándole el precio de venta a los agricultores, después de descontar los gastos correspondientes. Aunque la apelante era una agente de los agricultores vendedores, y no de los compradores, después de aprobarse la Ley 116 ya mencionada, al vender el café a los compradores la apelante incluía en el precio de venta el importe de la contribución y retenía tal importe, a los fines de entregarlo posteriormente al Tesorero de Puerto Rico.

El 11 de mayo de 1939 se aprobó la Ley núm. 145 de ese año ((1) pág. 703). Las secciones 3 y 4 de esa ley disponían lo siguiente:

"Sección 3.—El Tesorero de Puerto Rico queda por la presente autorizado, y se le ordena que, a partir de la cosecha 1939 al 1940 y en los años sucesivos, imponga y recaude una contribución especial de uno y medio (1½) centavos por cada libra de café crudo que se venda para consumo en Puerto Rico; *Disponiéndose,* que esta contribución sólo podrá cobrarse una vez cada año en el momento de efectuarse la primera venta, entendiéndose por 'primera venta' la efectuada por el agricultor a cualquier comerciante, traficante, manipulador, asociación cooperativa, torrefactor de café o cualquier otra persona natural o jurídica; *Disponiéndose,* que el precio mínimo que el Comisionado de Agricultura y Comercio fijará de conformidad con las disposiciones de Ley núm. 255 de 1938 quedará aumentado en el importe a que se contrae la contribución aquí impuesta; *Y disponiéndose, además,* que el comprador quedará obligado a pagar la citada contribución al Tesorero de Puerto Rico en la forma que éste prescriba en el reglamento que dictará al efecto. La contribución que por la presente se impone se considerará como

un gravamen preferente sobre cualquier propiedad mueble e inmueble que poseyere el comprador de café. El Tesorero de Puerto Rico queda facultado además para dictar las reglas y reglamentos que fueren necesarios para la recaudación de dicha contribución incluyendo multas administrativas y estas reglas tendrán fuerza de ley.

"Sección 4.—De la contribución especial así colectada, más de cualquier cantidad que ingresare por concepto de multas por infracción de esta Ley, el Tesorero de Puerto Rico destinará un ochenta (80) por ciento para la *'Puerto Rican Coffee Corporation'*, corporación doméstica con fines no pecuniarios, organizada al amparo de la Ley núm. 17 aprobada en abril 13, 1936, cuya suma formará parte del capital activo de dicha corporación."

La contribución especial se aumentó a uno y medio centavos por libra de café crudo, o sea, una diferencia de uno y cuarto centavos sobre la anterior contribución, pero la contribución seguía siendo pagadera por los compradores, imponiéndose la nueva contribución "a partir de la cosecha 1939 al 1940 ([1]) y en los años sucesivos".

Después de aprobarse la Ley 145 de 1939, la apelante tenía en su poder 2,898,082 libras de café crudo que procedían de la cosecha de 1938–1939. Había dudas sobre si el aumento en el impuesto verificado por la Ley 145 de 1939 era aplicable exclusivamente al café producido en las cosechas de 1939–1940 en adelante o si era aplicable además al café vendido después de la vigencia de la Ley 145, aunque hubiese sido producido antes de la cosecha 1939–1940. En otras palabras, había dudas sobre la aplicabilidad de la Ley 145 al café en poder de la apelante, que había sido producido en la cosecha 1938–1939 pero que no había sido vendido antes de la vigencia de la Ley 145. Así las cosas, el 21 de agosto de 1939 el Departamento de Hacienda expidió y publicó una carta circular en que indicaba que, a juicio de ese Departamento, la Ley 145 era aplicable solamente al café producido en las cosechas de 1939–1940 en adelante, y que el café de la cosecha 1938–1939

---

([1]) Las cosechas se inician en los últimos meses de un año y terminan en los primeros meses del próximo año.

pagaría solamente un impuesto de un cuarto de centavo por libra, de acuerdo con la Ley 116 de 1936. El 17 de noviembre de 1939 y el 27 de febrero de 1940 la apelante vendió el café de la cosecha 1938–1939, descontando y reteniendo del precio de venta el importe de la contribución de un cuarto de centavo por libra, que pagó al Tesorero. Como veremos más adelante, posteriormente, o sea, el 19 de mayo de 1942, el Tesorero de Puerto Rico requirió de la apelante que pagase una contribución adicional sobre la venta de ese mismo café, de $37,314.93, equivalente a la diferencia de uno y un cuarto de centavo por libra y un cuarto de centavo por libra, en virtud de la tesis de que la Ley 145 de 1939 era aplicable al café producido en la cosecha 1938–1939 y vendido después de la vigencia de la Ley 145, ya que, según el Tesorero, el impuesto era uno sobre ventas hechas después de la cosecha 1938–1939 y no sobre producción. Ese requerimiento es el que ha producido este litigio.

El 8 de mayo de 1940 se aprobó la Ley núm. 157 de ese año (pág. 933). La sección 3 de esa ley disponía lo siguiente:

"El Tesorero de Puerto Rico queda por la presente autorizado y se le ordena que imponga y recaude una contribución especial de uno y medio (1½) centavos por cada libra de café crudo que se venda en Puerto Rico, ya sea para consumo en la Isla o para exportación, por un período de diez (10) años; *Disponiéndose,* que esta contribución sólo podrá cobrarse una sola vez cada año, en el momento de efectuarse la primera venta, entendiéndose por 'primera venta' la efectuada por el agricultor a cualquier comerciante, traficante, manipulador, torrefactor de café, asociación cooperativa o cualquier otra persona natural o jurídica, ya se efectúe dicha venta para el consumo local o para la exportación; y en el caso de exportación o torrefacción del café por parte del agricultor, dicha exportación o torrefacción será asimismo considerada como la primera venta a los efectos de esta Ley; *Disponiéndose, además,* que cualquier comerciante, traficante, manipulador, asociación cooperativa, torrefactor de café o cualquier otra persona natural o jurídica que compre directamente del agricultor y el agricultor que exporte o torrefaccione el café, quedará obligado a pagar la citada contribución

al Tesorero de Puerto Rico en la forma que éste prescriba en el reglamento que dictará al efecto, junto con las reglas que fueren necesarias para la recaudación de dicha contribución, incluyendo la imposición de multas administrativas y estas reglas y reglamentos tendrán fuerza de ley. La contribución que por la presente Ley se impone constituirá un gravamen preferente sobre cualquier propiedad, mueble e inmueble que poseyere el comprador o agricultor que exporte o torrefaccione el café y que por esta Ley vienen obligados al pago de la citada contribución; *Disponiéndose, además,* que todo café que exista en Puerto Rico al entrar en vigor esta Ley, bien sea para consumo local o para la exportación, estará sujeto al pago de esta contribución si sobre el mismo no se ha pagado anteriormente y quedará obligado a pagar la misma al Tesorero de Puerto Rico todo comerciante, traficante, manipulador, asociación cooperativa, torrefactor de café o cualquier otra persona natural o jurídica que posea dicho café, aunque éste haya sido ya objeto de venta; *Y, disponiéndose, además,* que los tenedores de dicho café en existencia en Puerto Rico al entrar en vigor esta Ley deberán declarar dicha existencia bajo juramento dentro de un plazo de diez (10) días, en fórmula especial que suministrará el Comisionado de Agricultura y Comercio de Puerto Rico y todo café que fuere dejado de declarar con arreglo a lo que aquí se provee será confiscado por el Comisionado de Agricultura y Comercio una vez se comprobare dicha violación, y dicho café así confiscado se dispondrá para la exportación, y el producto de su venta ingresará en el 'Fondo para el Fomento del Mercado de Café de Puerto Rico', que crea la sección 5 de esta Ley. En caso de que cualquier cantidad de café no declarado con arreglo a lo que aquí se provee hubiere sido vendida después de entrar en vigor esta disposición, a la persona natural o jurídica que hubiese efectuado dicha venta el Comisionado de Agricultura y Comercio le impondrá una multa administrativa equivalente al producto de dicha venta que ingresará en el expresado 'Fondo para el Fomento del Mercado de Café de Puerto Rico'."

Bajo la ley ya citada, el impuesto se aplicaba a las ventas de café, no solamente para consumo en Puerto Rico, sino que también para exportación, y era aplicable a todo el café en existencia al regir la ley, debiendo pagar el impuesto las personas o entidades que estuviesen en posesión del café. [2]

---

[2] Las tres leyes que hemos citado fueron derogadas posteriormente por la Ley núm. 17 de 27 de noviembre de 1942—((2) pág. 73).

Como ya hemos indicado, el 19 de mayo de 1942 el Tesorero requirió de la apelante el pago de $37,314.93 en concepto de contribuciones, equivalente a la diferencia entre un centavo y cuarto por libra de café, y un cuarto de centavo ya pagado por la apelante, con respecto al café producido en la cosecha 1938-1939. La apelante radicó entonces una demanda trasladada finalmente a la sección de San Juan del Tribunal de Distrito de Puerto Rico. Las cuestiones en controversia se formularon finalmente sobre la base de una demanda enmendada, en que se alegaron, sustancialmente, los hechos que hemos expuesto; se indica que la demandante no era una compradora de café, sino una mera depositaria, no siendo aplicables a ella las leyes 116 de 1936, 145 de 1939 y 157 de 1940, pero que el Tesorero entiende lo contrario y que existe "inminente peligro y amenaza sobre los bienes de la actora de ser embargados por el demandado y rematados en cobro del supuesto tributo . . . . Que no siendo la demandante una contribuyente en relación con el cobro intentado por el Tesorero aquí demandado no ha podido ni puede acudir al remedio del pago bajo protesta establecido por la Ley 8 de 1927 (pág. 123) enmendada por la Ley 17 de 1941 ( (2) pág. 55), ni al ejercicio de ningún remedio que dicho estatuto o cualesquiera otro aplicables a la situación pudiera ofrecer. Que de llevar a efecto el demandado su amenaza, los bienes de la demandante serán embargados, ejecutados y llevados a pública subasta con grave riesgo y perjuicio irreparable para ella toda vez que siendo como es una institución de carácter cooperativo que no funciona para beneficios pecuniarios sino meramente para la protección de sus miembros asociados, prácticamente quedaría arruinada e impedida de continuar su existencia. Que la demanda (sic) carece de un remedio adecuado en ley para afrontar la situación creádale por la tentativa no autorizada ejercitada contra ella por el Tesorero demandado, fuera de su presente acción declarativa de nulidad de lo actuado y lo por actuar por dicho demandado."

La súplica de la demanda enmendada es la siguiente:

"Se sirva declarar con lugar esta demanda en todas sus partes, y especialmente decretando:

"Que el requerimiento de cobro de $37,314.93 dirigido por el Tesorero de Puerto Rico a la actora con fecha 19 de mayo de 1942 es ilegal, nulo, ineficaz e improcedente y ordenándole se abstenga de hacerlo efectivo y de seguir procedimientos fiscales de apremio, embargo, y ejecución de bienes de la actora para satisfacerlo.

"Que la actora no viene obligada al pago de la suma de $37,314.93 ni de ninguna otra suma inferior o superior, por el concepto indicado en el requerimiento del demandado a la demandante de fecha 19 de mayo de 1942, ni por ningún otro concepto relacionado con el café crudo de los agricultores miembros de la Cooperativa demandante correspondiente a las cosechas anteriores a la del año 1939.

"Que el Tesorero de Puerto Rico aquí demandado está impedido definitivamente de mantener o renovar el requerimiento de cobro de la suma antes expresada a la demandante y de entablar procedimientos administrativos fiscales contra los bienes de ésta, con el alegado fin de cobrar la inexistente contribución a que se refiere esta demanda.

"Cualquier otro pronunciamiento compatible con la razón y la justicia que ameriten los hechos de este caso."

Se celebró la vista del caso en sus méritos y finalmente el tribunal a quo dictó sentencia declarando sin lugar la demanda. Formuló las siguientes conclusiones de hecho:

"La determinación del Tesorero de Puerto Rico no consistió en cobrar los impuestos sobre las existencias de 2,898,082 libras de café crudo bajo las disposiciones de la ley núm. 157 de 1940. Aparece claramente de las alegaciones tanto del Tesorero como de la propia demandante, así como también del estado de arbitrios que le enviara el Tesorero a la demandante en cobro de la deuda contributiva, que la determinación del Tesorero fué en el sentido de que la demandante tenía en su poder las referidas existencias de café al entrar en vigor la Ley núm. 145 de 1939, y que al entrar en vigor la Ley núm. 157 de 1940, solamente tenía 72,443 libras de café. Esto se desprende también de la carta enviada por el Tesorero a la demandante en 19 de agosto de 1942, copia de la cual la propia demandante acompañó a su moción de sentencia sumaria.

"La demandante tenía en su poder las 2,898,082 libras de café bajo la vigencia de la Ley núm. 145 de 1939. Su moción de sentencia sumaria se basó específicamente en este hecho alegado por ella misma; y probado a satisfacción de este Tribunal. Véase la declaración jurada de su Gerente General. En verdad, en cuanto a este hecho no hay conflicto en las alegaciones o en la prueba, pues, como señalamos anteriormente, la determinación del Tesorero fué cobrar los impuestos sobre dichas existencias de café a base de la Ley núm. 145 de 1939, y no la Ley núm. 157 de 1940."

A base de esas conclusiones de hecho, el tribunal determinó que bajo la ley 145 de 1939 la demandante era una contribuyente obligada a pagar la contribución especial fijada por dicha ley 145 y que, siendo el remedio solicitado uno en equidad, especialmente de injunction, ella tenía un remedio adecuado en ley, cual era el de pago bajo protesta y de litigar sus alegaciones ante el Tribunal de Contribuciones, no pudiendo acogerse ella a un remedio en equidad.

La demandante ha apelado ante este Tribunal y ha señalado varios errores. Este caso debe ser resuelto a base de una cuestión previa, sin que sea necesario el que consideremos los méritos intrínsecos de la cuestión relativa a la aplicabilidad de la Ley 145 de 1939 a la cosecha de café de 1938–1939. La demanda enmendada se presta a una interpretación dual en cuanto a su objetivo y alcances. Es susceptible de ser interpretada como una reclamación de sentencia declaratoria conjuntamente con una reclamación de injunction prohibitorio. Bajo cualquier punto de vista, lo que se solicita es un remedio en equidad. Es aplicable a este caso la regla general al efecto de que, en materia de contribuciones, no procede un remedio en equidad, especialmente el de injunction, si el supuesto contribuyente tiene a su alcance un remedio adecuado en el curso ordinario de la ley, tal como en este caso, el pago de la contribución seguido por una reclamación de reintegro formulada en el anterior Tribunal de Contribuciones. Precisamente las mismas cuestiones envueltas en este caso, sustancialmente, fueron ya planteadas ante este Tribunal en

el caso, compañero del de autos, de *Cooperativa Cosecheros de Café* v. *Tesorero*, 69 D.P.R. 226.(³)    Se indicó y resolvió lo siguiente:

"La acción que se trata de ejercitar por la demandante puede ser considerada como una sobre sentencia declaratoria, a tenor de lo dispuesto en la Ley Uniforme Sobre Sentencias Declaratorias, o como un recurso clásico de injunction para que se prohiba al Tesorero que cobre el impuesto.    Ninguna de dichas dos acciones es procedente.    Para la procedencia de cualquiera de dichos recursos es necesario que el demandante tenga la condición de contribuyente respecto de los impuestos que se le cobran; y, además, que el demandante no tenga algún otro remedio legal adecuado para la protección de sus derechos.    La demandante alega que ella no tiene obligación legal de pagar el impuesto, porque esa obligación recae sobre los compradores del café.    De acuerdo con la ley, el contribuyente es, en primer lugar, el comprador del café o sea aquél que lo adquiere directamente del agricultor; en segundo lugar, el agricultor en el caso de que él mismo lo exporte o lo torrefaccione; y, en tercer lugar, cualquier persona natural o jurídica que, en la fecha de vigencia de la ley, tenía en su poder existencias de café sobre el cual no se hubiere pagado anteriormente la contribución.

"Si asumimos que la demandante tiene la condición de contribuyente, la acción sobre sentencia declaratoria es improcedente de acuerdo con lo resuelto por este Tribunal en *Power Electric Co.* v. *Buscaglia, Tes.*, 63 D.P.R. 984.    Resolvimos en dicho caso que el remedio provisto por la ley ante el Tribunal de Contribuciones es el adecuado y que 'no debe permitírseles de ordinario a los contribuyentes que eviten el pasar por dicha Corte utilizando el procedimiento de solicitar una sentencia declaratoria en la corte de distrito.'

(³) En Ponce existían, coetáneamente, dos entidades cooperativas análogas, que realizaban las mismas funciones y tenían el mismo fin, una, la demandante en el caso de autos y la otra, la Cooperativa de Cosecheros de Café.    En ambos casos el café vendido era producto de cosechas anteriores al 1939–1940.    En ambos casos se plantearon las mismas alegaciones y argumentos.    Aun si asumimos que en el caso de *Cooperativa de Cosecheros de Café* v. *Tesorero*, el café se vendió después de la vigencia de la Ley 157 de 1940, y no antes, como ocurre en el caso de autos, el *ratio-decidendi* del caso citado es aplicable al de autos, ya que en el caso citado se estableció un dictamen aun a base de que la demandante no fuera contribuyente.

"Si aceptáramos, como se alega en la demanda, que la Cooperativa demandante no tiene la condición de contribuyente, por no ser compradora del café, el remedio de injunction sería procedente si la demanda contuviera las alegaciones necesarias para justificar la aplicación de ese remedio extraordinario. En *Fernández* v. *Buscaglia, Tes.*, 60 D.P.R. 596, resolvimos, copiando del sumario, que' . . . no basta que la petición exponga meramente la conclusión de que el cobro resultará en daño irreparable. Debe alegar hechos específicos de los cuales pueda la corte concluir razonablemente que sólo mediante el remedio de injunction pueden impedirse daños irreparables.' La demanda en este caso no cumple con tales requisitos. La alegación de que el Tesorero amenaza hacer efectivo el cobro de la contribución mediante el procedimiento de apremio, no es por sí misma suficiente para establecer un caso de daños irreparables. Así lo resolvimos en *Fernández* v. *Buscaglia,* supra.

"*La sentencia recurrida será confirmada.*"

Hemos reexaminado las cuestiones resueltas en el caso anteriormente citado, y hemos llegado a la conclusión de que la doctrina sentada en ese caso debe ser ratificada y aplicada al de autos.

El caso de *Fernández* v. *Buscaglia, Tes.*, supra, se resolvió al amparo del artículo 678 del Código de Enjuiciamiento Civil, tal como regía en la fecha en que se resolvió ese caso. Se indicó lo siguiente, a la página 598:

"Tenemos ante nuestra consideración solamente la negativa de la corte inferior a expedir un injunction preliminar. El artículo 678 del Código de Enjuiciamiento Civil, Ed. 1933, dispone que 'No podrá otorgarse un injunction: . . . 7. Para impedir la imposición o cobro de cualquier contribución establecida por las leyes de los Estados Unidos o de Puerto Rico.'

"En vista de este estatuto, cuidadosamente hemos limitado el remedio de injunction a aquellos casos de los cuales aparece claramente no sólo que la contribución es ilegal, sino que también o (*a*) que el contribuyente carece de un remedio adecuado en ley, o (*b*) que la contribución le ocasionaría daños irreparables, o (*c*) daría lugar a una multiplicidad de pleitos . . ."

Con posterioridad al caso citado nuestra Asamblea Legislativa le imprimió aún más vigor y fortaleza al criterio encar-

nado en el caso de *Fernández* v. *Buscaglia*, al aprobar las Leyes 1 y 2 de 1946, aprobadas el 25 de febrero de 1946 ( (1) págs. 3 y 7, respectivamente). Ambas leyes determinaron que no procede un injunction para impedir el cumplimiento de cualquier actuación de un funcionario público autorizada por ley, a menos que se hubiera determinado por sentencia final, firme, inapelable e irrevisable, que dicha actuación es inconstitucional e inválida; que cualquier clase de injunction expedido bajo esas circunstancias, que estuviese en vigor a la fecha de la vigencia de la Ley núm. 1, era o será nulo e inefectivo; que la acción conocida en equidad como acción del contribuyente (*taxpayer suit*) queda prohibida; que ninguna corte de Puerto Rico tendrá jurisdicción para conocer, o continuar conociendo si se hubiera ya iniciado, en primera instancia o en grado de apelación, de ninguna acción o procedimiento interpuesto por un contribuyente en que se impugne la validez, o constitucionalidad de cualquier ley de Puerto Rico o de cualquier actuación de un funcionario público autorizada por ley, y que los recursos provistos en la Ley de Sentencias Declaratorias no podrán contravenir las disposiciones de la Ley núm. 2 citada y que en ningún recurso de sentencia declaratoria se expedirán autos de injunction u órdenes de entredicho en violación de las disposiciones de la Ley núm. 2.

La demanda en el caso de autos fué radicada antes de aprobarse las leyes 1 y 2 citadas, pero la sentencia fué dictada por el tribunal a quo después de la vigencia de esas leyes. Independientemente de cualquier cuestión relativa a la aplicabilidad y alcance de esas dos leyes (Cf. *Las Monjas Racing Corp.* v. *Com. Hípica*, 67 D.P.R. 45; *Suárez* v. *Tugwell, Gobernador*, 67 D.P.R. 180; *Mari* v. *Vicéns*, 67 D.P.R. 473; *Jiménez* v. *Jiménez*, 71 D.P.R. 502), es incuestionable que ellas ratifican y apuntalan el criterio establecido anteriormente por este Tribunal, sobre bases estatutarias, al efecto de que no procede un injunction o una sentencia declaratoria en cuanto al pago de contribuciones si el demandante tiene a su

alcance un remedio adecuado en ley en cuanto al pago o reintegro de contribuciones. *Fernández* v. *Buscaglia, Tes.*, supra; *Power Electric Co.* v. *Buscaglia, Tes.*, supra. Ese criterio ha sido ratificado recientemente por este Tribunal en *Descartes, Tes.* v. *Tribl. Contrib. y Trigo Hnos.*, 73 D.P.R. 295.

La regla que hemos enunciado (primero es pagar antes que litigar), está sólidamente basada en una política general inspirada en la protección de intereses sociales de mayor validez y significación que el interés individual transitorio en rehuir el pago inmediato de una contribución. El gobierno no debe ser obstruído en el ejercicio de sus funciones. La doctrina prohibitoria de injunctions al existir un remedio adecuado en ley se basa en el deseo de evitar la paralización de las actividades gubernamentales, en armonía con la protección de los intereses legítimos del contribuyente al concederle a éste una oportunidad razonable de hacer valer sus derechos en el remedio ordinario en ley que está a su alcance.

Tal como ha indicado la Corte Suprema de los Estados Unidos en el caso de *Great Lakes Co.* v. *Huffman*, 319 U.S. 293, 87 L. ed. 1407, las mismas razones que determinan la improcedencia del injunction en estas situaciones, son también eficaces para prohibir un recurso de sentencias declaratorias en cuanto a una controversia en torno a la obligación de pagar contribuciones, ya que, sustancialmente, el recurso de sentencias declaratorias participa de la naturaleza de un remedio en equidad, y su consideración preferente, antes del pago de la contribución, puede también obstaculizar el curso normal de las actividades gubernamentales. Al mismo efecto véanse *Descartes, Tes.* v. *Tribl. Contrib. y Trigo Hnos.*, supra, y el caso reciente de *Goodyear Tire & Rubber Co.* v. *Tierney*, 104 N.E.2d 222, 1952.

Pero alega la apelante que la regla que restringe la procedencia de injunctions y sentencias declaratorias en casos contributivos cuando existe un remedio adecuado en ley no es

aplicable a una situación como la envuelta en el caso de autos en que la apelante alega que ella no es una contribuyente en absoluto, y que las leyes 116 de 1936 y 145 de 1939 no son aplicables a la apelante, ya que esas leyes disponen la imposición del tributo sobre compradores de café, no siendo la apelante una compradora, sino una cooperativa de agricultores-vendedores que sirve exclusivamente de agente de los vendedores y no de los compradores. Empero, aun si la apelante puede tener una base razonable para su contención de que ella no es una contribuyente sujeta al ámbito de la ley, las consideraciones de política pública que hemos expuesto determinan que esa alegación de la apelante debe ser dilucidada en el procedimiento ordinario relativo al pago de contribuciones, y no en el procedimiento que ha escogido la apelante. De todos modos, toda reclamación de ilegalidad de una contribución envuelve una alegación de que, en cuanto a cierta cuantía o en cuanto a ciertas partidas, por lo menos, la reclamante no es una contribuyente. Toda alegación de exención, por ejemplo, envuelve una contención de que determinada ley no es aplicable a un demandante. Cf., anotación en 84 A.L.R. 1315, 1326: *Injunctions to Enforce Exemptions.* Desde el punto de vista de la equidad, podría argumentarse que sería injusto y opresivo el obligar a una persona que claramente no es una contribuyente a pagar una contribución que ella no adeuda, y que es absolutamente nula, y luego obligarla a iniciar un procedimiento de reintegro. Pero no podemos olvidar que muchas doctrinas jurídicas son resultado de un proceso de pesar y aquilatar distintos intereses y necesidades individuales y públicas. El interés en evitar una inconveniencia individual inmediata debe quedar subordinado, en estas situaciones, al interés social, de mayor significación, de evitar una paralización en las actividades gubernamentales. Hemos hablado de una inconveniencia individual inmediata, y no permanente, ya que la doctrina en discusión presume la existencia de un remedio adecuado en ley, en el cual las alegaciones de la

reclamante han de dilucidarse finalmente. Se trata entonces de determinar quién ha de sufrir el impacto inmediato, o el ciudadano al pagar la contribución y verse obligado a esperar determinado período de tiempo para su reintegro, o el gobierno al no recibir el pago de la contribución y verse obligado a esperar para poder obtener aquellos recursos fiscales que son necesarios para su funcionamiento. Ese dilema ya ha sido resuelto en el sentido de imponer la carga inmediata de la dilación en cuanto a la solución final del asunto sobre el contribuyente.

■ Además, no es enteramente claro que la apelante no sea una contribuyente. Su *status* no se perfila con una claridad meridiana. (⁴) De un lado, las leyes 116 de 1936 y 145 de 1949 disponían que el tributo se impondría sobre la primera venta del café, quedando el comprador obligado a pagar la contribución. La apelante, en su organización y en sus funciones usuales, no era una compradora sino que era un agente de los vendedores. De otro lado, como cuestión de hecho, después de la vigencia de la Ley 116 de 1936, la apelante seguía la práctica de pagar ella misma la contribución, después de deducirla del precio de venta. De la prueba incontrovertida presentada por la propia apelante surgió, además, que al entregar los agricultores el café a la apelante, ella anticipaba a los agricultores una parte sustancial del precio de venta, a base de préstamos concertados anteriormente por la apelante. También debemos observar que el 18 de septiembre de 1939 el Tesorero de Puerto Rico promulgó el Reglamento núm. 34, para la "cobranza de la contribución de uno y medio (1½) centavos por cada libra de café crudo que se venda para consumo en Puerto Rico", y en ese Reglamento se definió el concepto de "comprador" en la forma siguiente:

---

(⁴) Naturalmente, la cuestión de si la demandante era o no era una contribuyente, a los fines de la procedencia de un remedio en equidad, es distinta a la cuestión de la imponibilidad del aumento en el tributo en cuanto a cosechas de café anteriores a la de 1939–1940.

"Comprador significará cualquier persona o traficante, manipulador, asociación cooperativa que por sí, o por medio de sus agentes o empleados compre, permute o reciba, mediante cualquier otra clase de contrato, café crudo directamente del agricultor."

Tal definición es aplicable a la apelante. Es cierto que un Reglamento puede ser nulo y *ultra vires* si sus disposiciones son contrarias a, o no están autorizadas por la ley. Las leyes citadas no definen exactamente el término "comprador", y determinan que el comprador vendrá obligado a pagar la contribución en la forma que el Tesorero "prescriba en el reglamento que dictará al efecto". De todos modos, basta con decir que la cuestión relativa al *status* de la apelante es debatible, lo cual acentúa más la aplicabilidad a este caso de la doctrina relativa a la improcedencia de los recursos de injunction y de sentencia declaratoria al tener la demandante un remedio adecuado en el curso ordinario de la ley.

Alega la apelante que el remedio de pago previo de la contribución y reclamación de reintegro no es adecuado en su caso, ya que ella sufriría daños irreparables, en vista de que ella es una asociación cooperativa que no recibe beneficios ni lucro alguno, siendo una mera intermediaria de los agricultores y que, por lo tanto, ella no tiene fondos disponibles para pagar la contribución y que, en su consecuencia, el Tesorero tendría que embargar, ejecutar y vender en pública subasta los bienes de la apelante. Naturalmente, el remedio en ley no es adecuado si conlleva o no evita daños irreparables. Se ha decidido que no procede un injunction para impedir el cobro de una contribución a menos que existan circunstancias especialmente extraordinarias que hagan necesario ese remedio coercitivo. *Paul Smith Const. Co.* v. *Buscaglia,* 140 F.2d 900.(5) No se ha demostrado que esas circunstancias

---

(5) Se podría alegar que aun esa excepción en cuanto a circunstancias especialmente extraordinarias, equivale a legislación judicial, ya que los estatutos que prohiben injunctions en casos de cobro de contribuciones no contienen taxativamente esa excepción. Véase, 49 Harv. L. Rev. 109: "Enjoining the Collection of Federal Taxes Despite Statutory Prohibition."

extraordinarias concurran en este caso. La misma alegación que la apelante formula en este caso fué desestimada por este Tribunal en *Cooperativa Cosecheros de Café* v. *Tesorero*, supra, al resolver que la alegación de que el Tesorero amenaza hacer efectivo el cobro de la contribución mediante el procedimiento de apremio no es por sí misma suficiente para establecer un caso de daños irreparables. Véase, además, *Fernández* v. *Buscaglia, Tes.*, supra. En vista de las relaciones entre la apelante y sus socios agricultores, incluyendo posibilidades de crédito, no se ha demostrado que éste sea un caso de insolvencia, ruina y desaparición de la apelante de tramitarse el cobro de la contribución.

*Debe confirmarse la sentencia apelada.*