CLOTILDE, CARMEN y PURA LARROCA TARAZONA, la primera asistida de su esposo JUAN HERNÁNDEZ ORCASITAS, demandantes y recurrentes, *v.* MARÍA ABOY VDA. DE PÉREZ PIERRET y EL SECRETARIO DE HACIENDA DE PUERTO RICO, demandados y recurrido el segundo.

Número 12368.

*Sometido:* 22 de abril de 1960. *Resuelto:* 26 de abril de 1961.

*Carlos D. Vázquez,* abogado de las recurrentes Carmen y Pura Larroca; *J. B. Fernández Badillo, Secretario de Justicia, Arturo Estrella, Secretario Auxiliar* y *Edgar S. Belaval, Procurador Auxiliar,* abogados del recurrido.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

Las hermanas Clotilde, Carmen y Pura Larroca Tarazona demandaron a María Aboy Vda. de Pérez Pierret y al Secretario de Hacienda de Puerto Rico alegando que ellas son dueñas de un solar de 425.71 metros cuadrados de superficie sito en la Calle Hernández de Santurce conteniendo una casa de hormigón de dos plantas con garage y cuarto de servicio, estando inscrita la referida finca en el Registro de la Propiedad de San Juan a nombre de la demandada María Aboy Vda. de Pérez Pierret; que dicho inmueble fue adquirido en 1938 en fideicomiso por María Aboy Vda. de Pérez Pierret con el producto de donaciones que hicieran Antonio Pérez Pierret, esposo ya difunto de María Aboy y su hermana Ángela Pérez Pierret a sus sobrinas las demandantes; que el título de propiedad sobre el descrito inmueble se hizo figurar a nombre de María Aboy para garantizar que las demandantes no enajenaran el mismo durante su juventud y lo conservaran como patrimonio suyo; y que a pesar de que María Aboy sabía que la finca descrita era y es de la propiedad de las demandantes y que se hizo figurar a su nombre por las razones dichas, ella se niega a traspasarles el título de la misma no obstante los requerimientos que se le han hecho. Alegan además que la donación de Antonio y de Ángela Pérez Pierret a sus sobrinas se hizo con anterioridad al año 1938 no estando vigente la ley que impone contribución a !as

donaciones y que ellas no adeudan por lo tanto al Pueblo de Puerto Rico suma alguna por ese concepto. En la súplica de la demanda pidieron que se dictara sentencia que ordenara al Registrador de la Propiedad de San Juan a inscribir la finca objeto del pleito a favor de las demandantes, y *declarara* que no adeudan al Secretario de Hacienda suma alguna por concepto de contribución sobre donaciones.

La demandada María Aboy no compareció y se anotó su rebeldía en autos. El Secretario de Hacienda contestó negando por falta de información y creencia los hechos de la demanda, y alegó como defensa especial que de ser ciertos los mismos las demandantes vendrían obligadas a pagar la contribución sobre donación ya que dicha donación no surtiría efecto hasta no ser firme la sentencia del tribunal declarando probados los hechos alegados en la demanda.

La prueba no controvertida aportada solo por las demandantes estableció lo siguiente: De acuerdo con el testimonio del Lcdo. Salvador Suau Carbonell las demandantes, que eran solteras, quedaron en una situación económica precaria en vida del padre quien tuvo una larga enfermedad, agravándose la situación aun más después de su muerte. Para proveerles alguna protección sus tíos Antonio y Ángela Pérez Pierret, esta última esposa del testigo, dedicaron una propiedad consistente de un solar ganancial que aportaron los esposos Suau y de una casa que Antonio Pérez Pierret edificó con dinero propio sobre dicho solar. La propiedad se vendió por Antonio sin que las demandantes la ocuparan y con el producto se creó un fondo separado a disposición de ellas que fue reinvertido, entre otras cosas, en una hipoteca sobre otro inmueble sito en la Calle Unión de Miramar. Adquirida esta propiedad la misma fue vendida por Antonio Pérez Pierret y con el producto se compró el solar objeto de este pleito sito en la Calle Hernández de Santurce a nombre de la demandada María Aboy siendo ya viuda de Antonio Pérez Pierret y se construyó una edificación de dos plantas para lo

cual fue necesario tomar la suma adicional de $1,766.86 en hipoteca. Las demandantes ocuparon la planta alta de esta edificación desde que se construyó la misma y destinaron la planta baja a alquiler. Con las rentas producidas pagaron eventualmente la referida hipoteca. Declaró el Lcdo. Suau que María Aboy nunca había negado que la propiedad pertenecía a las hermanas Larroca y que, por el contrario, había estado constantemente preocupada y deseosa de que el traspaso a ellas se hiciera cuanto antes para evitar que quedaran en el aire, y siempre había reconocido que dichas hermanas eran las dueñas absolutas de dicho inmueble.

Por escritura número 17 otorgada en San Juan el 8 de marzo de 1938 ante el Notario Celestino Iriarte, Jr., Luis Fernández Cuyar vendió a María Aboy Vda. de Pérez Pierret el solar aquí envuelto compuesto de 425.71 metros cuadrados sito en la Calle Hernández de Santurce. La venta se hizo por el precio de $2,554.26 cantidad ésta que la compradora María Aboy entregó en presencia del Notario. Llamado a declarar, Luis Fernández Cuyar manifestó que vendió el solar a petición de Ángela Pérez Pierret quien le suplicó encarecidamente que se los vendiera para que las hermanas Larroca fabricaran una casa, y que la operación la hizo con María Aboy aunque con el fin primordial de que ella fabricara la casa que allí existe para dichas hermanas. Dijo el testigo que la propia María Aboy había manifestado en ese entonces que las hermanas Larroca vendieron una propiedad que ellas tenían en Miramar y deseaban invertir el producto disponible en la compra de un solar de menos valor para que el dinero les alcanzara para fabricar una casa. La casa se edificó y desde el primer momento las demandantes ocuparon la planta alta de la misma y continuaban ocupándola.

La demandante Pura Larroca declaró que sus tíos Antonio y Ángela Pérez Pierret eran personas ricas y acomodadas que siempre les dieron un trato de padres como si ellas fueran sus propias hijas. Les regalaron un solar en la Calle Suau

y en él construyeron una casa para ellas. Vendida esta propiedad el importe se invirtió en una hipoteca sobre otra en la Calle Unión, constituida a nombre de Antonio Pérez Pierret y su esposa, según escritura número 6 de 9 de febrero de 1928 ante el Notario José Hernández Usera. En 29 de mayo de 1929 las demandantes adquirieron la propiedad hipotecada en virtud de certificado de compra expedido por el Colector en ejecución para el cobro de contribuciones adeudadas por la cantidad de $97.30. Por escritura número 38 de 10 de diciembre de 1937 ante el Notario Salvador Suau las demandantes vendieron la misma a María Aboy por la suma de $3,000 que confesaron haber recibido antes del otorgamiento, pero que no recibieron como cuestión de realidad. Posteriormente, la propiedad de la Calle Unión fue vendida por el precio de $7,000 más o menos y con el producto se compró el solar de la Calle Hernández a nombre de María Aboy y se construyó la casa, obteniéndose la cantidad adicional necesaria de $1,766.86 en hipoteca sobre el propio inmueble según escritura número 7 de 30 de enero de 1939 ante el Notario Luis Ríos Algarín. Las demandantes siempre ocuparon como su residencia la segunda planta de la edificación desde el momento mismo en que fue construida en 1938, y la planta baja la dedicaron a alquiler con cuyas rentas pagaron en 12 de febrero de 1946 la hipoteca de $1,766.86. El récord demuestra que siempre se consideró a las demandantes como beneficiarias de los fondos de inversiones mencionados aunque por su juventud, y para protegerlas, aparecían a nombre de su tío Antonio Pérez Pierret, y muerto éste a nombre de su viuda, y siempre se les tuvo públicamente como dueñas de la propiedad objeto de la demanda, disfrutando de la misma y de sus rentas. Al igual que el Lcdo. Suau la testigo declaró que la propia demandada María Aboy quería que la propiedad pasara a nombre de las demandantes, y que en momento alguno había negado que ellas fueran las dueñas.

Con esa prueba la Sala sentenciadora concluyó correctamente como cuestión de hecho que la propiedad pertenecía a las demandantes, y así lo dispuso en su sentencia. En derecho hizo las siguientes conclusiones:

"Establecido que como cuestión de hecho la descrita propiedad pertenece a las demandantes, subsiste el punto de derecho sobre desde cuando, en sentido válido, las demandantes son dueñas del inmueble. Si bien es verdad que el propósito de los hermanos Pérez Pierret fue donarles desde 1937 una propiedad que sirviera para residencia de las hermanas y como capital básico de las mismas, la verdad es que de acuerdo con nuestro Código Civil y la jurisprudencia aplicable 'para que sea válida la donación de cosa inmueble ha de hacerse en escritura pública, expresándose en ella individualmente los bienes donados y el valor de las cargas que debe satisfacer el donatario.'

"La aceptación podrá hacerse en la misma escritura de donación o en otra separada; pero no surtirá efecto si no se hiciese en vida del donante.

"Hecha en escritura separada, deberá notificarse la aceptación en forma auténtica al donante, y se anotará esta diligencia en ambas escrituras. —Artículo 575 Código Civil, 31 L.P.R.A. 2010.

"Se ha establecido por la jurisprudencia que una donación que no cumple con este artículo no solamente es anulable sino que es inexistente. Por ello, tenemos que darle la razón al Secretario de Hacienda, que es codemandado en este caso, en el sentido de que para los efectos de la Ley de Contribuciones sobre Herencia, *es por disposición de la sentencia que vamos a dictar que pasará legalmente el título de la propiedad a favor de las demandantes y por ello las demandantes tendrán que pagar la contribución sobre donaciones*, con excepción de las mejoras que las demandantes puedan probar al Secretario de Hacienda que han hecho sobre esa propiedad con dinero de su propio peculio, y reduciendo también los mencionados $1,766.86 que fueron pagados por las demandantes de las rentas de la propiedad. Esas rentas constituyeron una donación de bienes muebles que según el Artículo 575 de nuestro Código Civil es válido, ya que hubo la donación verbal y actual de esas rentas y además fueron entregadas a, y aceptadas por las donatarias."

A tenor de dichas conclusiones decretó la Sala que las demandantes vienen obligadas a pagar la contribución sobre donaciones reduciendo del valor del inmueble la suma de $1,766.86 y el de cualquier mejora capital que a dicha finca hubieren hecho las demandantes con dinero propio.

Las apelantes sostienen ante nos que la Sala sentenciadora erró al resolver que en este caso se trata de una donación de bienes inmuebles y no de un fideicomiso *"constructivo";* al resolver que aun cuando se tratara de una donación de bienes inmuebles la misma no era válida por no haber mediado el requisito de la escritura pública, sosteniendo que medió tal escritura; y al resolver que las demandantes vienen obligadas a pagar contribución sobre donación por la adquisición de los bienes recibidos. Como podrá observarse, todos los errores levantados tienen que ver con el aspecto del caso relativo al pago de la contribución sobre donaciones. Aun más, lo dicho en el récord por el Lcdo. Suau y por una de las demandantes en cuanto a la actitud de la demandada María Aboy, y la no comparecencia de ésta a defenderse, inclinan a creer que este caso se tramitó principalmente con miras al pronunciamiento contributivo que en el mismo se hizo.

Entendemos que la Sala sentenciadora carecía de facultad y de jurisdicción en el procedimiento que está ante nos, para considerar y resolver sobre la procedencia o no del pago de una contribución de donación, y careciendo la Sala de instancia de tal facultad en ley, tampoco la tiene este Tribunal para considerar y resolver en apelación los méritos del pronunciamiento contributivo. Conocido es el principio que de ordinario una acción judicial que requiera un fallo sobre si procede o no imponer y cobrar una contribución o si existe la obligación o no de pagarla, es una demanda contra el Soberano y requiere el consentimiento del Estado para que se le demande.

■ En tal caso hay que seguir estrictamente el modo y manera de demandarlo fijado en el consentimiento, y han de cumplirse los requisitos previos exigidos por el Estado para que se le demande, en ausencia de todo lo cual el tribunal carece de jurisdicción si por ésta se entiende su facultad para conocer de un determinado pleito o asunto y fallarlo. Tampoco puede invocarse y sostenerse tal facultad por el hecho de que la acción sea una de tipo declarativa aun bajo estatutos que permiten obtener sentencias declaratorias. *La Correspondencia de Puerto Rico* v. *Buscaglia*, 58 D.P.R. 680; *Nazario* v. *Gallardo*, 40 D.P.R. 791; *Standard Comm. Tob. Co.* v. *Tribunal de Contribuciones*, 71 D.P.R. 749; *Mayagüez Light, P. & I. Co.* v. *Tribunal de Contribuciones*, 68 D.P.R. 519; *Monge* v. *Tribunal de Contribuciones*, 68 D.P.R. 639; *Méndez* v. *Buscaglia*, 64 D.P.R. 743; *Gómez* v. *Tribunal de Contribuciones*, 73 D.P.R. 471; *Valiente y Cía.* v. *Cuevas*, 65 D.P.R. 181; *Bonet* v. *Yabucoa Sugar Co.*, 306 U.S. 505. Cf: *Cafeteros de Puerto Rico* v. *Tesorero*, 74 D.P.R. 752 y *Cooperativa Cosecheros de Café* v. *Tesorero*, 69 D.P.R. 226. Cf: *Great Northern Ins. Co.* v. *Read*, 322 U.S. 47; *Ford Co.* v. *Dept. of Treasury*, 323 U.S. 459.

■ A la fecha de la demanda en este caso el consentimiento aparecía en la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 24 de julio de 1952, al disponerse en la sección 13(a)2—4 L.P.R.A. sec. 121(a)2 que el Tribunal Superior conocerá. . . . . "De todo caso, acción procedimiento o recurso extraordinario *relacionado* con, o que afecte, la imposición, cobro y pago de toda clase de contribuciones incluyendo . . . . . contribuciones sobre herencia y donaciones" . . . (1) Complementario de la anterior dispo-

---

(1) Antes, el consentimiento para ser demandado se dio en términos parecidos en la Ley 328 de 13 de mayo de 1949 creando el Tribunal de Contribuciones, art. 2; la Ley 169 de 15 de mayo de 1943, sec. 4; Ley 172 de 13 de mayo de 1941, sec. 4 según fue enmendada por la Ley 32 de 21 de noviembre de 1941. En otra forma, en las distintas leyes desde principios de siglo que autorizaron demandar para el recobro de contribuciones pagadas bajo protesta.

sición es el artículo 1 de la Ley 235 de 10 de mayo de 1949 —13 L.P.R.A. sec. 281 disponiendo que: "En todos los casos de la jurisdicción del Tribunal de Contribuciones" [Tribunal Superior—sec. 13 (a) 2 de la Ley de la Judicatura] *"regirá exclusivamente el procedimiento* que se establece *en esta Ley* para recurrir a dicho Tribunal." El artículo 2 A 4 de la referida Ley 235—13 L.P.R.A. sec. 282 A 4—estatuye la "forma", "término" y el "previo" cumplimiento de los requisitos que han de observarse para acudir al Tribunal Superior a litigar una contribución sobre herencias y donaciones. Véase en adición al art. 7 de la Ley 99 de 1925—13 L.P.R.A. sec. 896.

Desde que a partir de la creación del primer Tribunal de Contribuciones en 1941 se modificó la política pública hasta ese entonces imperante que requería el pago de toda contribución y luego ser litigada en procedimiento para su devolución, ha existido también otra política pública fija e invariable al efecto de que antes de lanzar la controversia contributiva al foro judicial debe haber una determinación administrativa sobre la misma de carácter final. Tal determinación administrativa previa es requisito esencial del consentimiento dado, a ser cumplido.[2] Las razones de tal política pública son obvias. Aparte de un ordenado encauzamiento de las controversias contributivas y de la fijación de puntos de partida claros prescriptivos para iniciar litigios en corte, al Secretario de Hacienda se le reservó la decisión en primer lugar de tales controversias por recaer en dicho funcionario, y no en los tribunales, la responsabilidad en primera instancia de implantar las leyes contributivas y la política pública fiscal en general. Además, el legislador

---

[2] En adición a incluirse el requisito en los procedimientos relativos a cada contribución en particular, las propias leyes 172 de 1941, 169 de 1943 y 328 de 1949 creadoras de los anteriores Tribunales de Contribuciones dispusieron que la jurisdicción del Tribunal no podría invocarse por persona alguna "hasta que sobre el asunto en discusión haya recaído la correspondiente resolución administrativa por parte del Tesorero de Puerto Rico, de acuerdo con la ley."

quiso impedir que se emitieran pronunciamientos que afecten al erario público en cuanto a la imposición y cobro, de contribuciones, o su monto, en incidentes colaterales dentro de otro tipo de litigación, posiblemente sin todos los elementos de juicio necesarios aun cuando al Secretario de Hacienda. se le haga parte, soslayándose indirectamente el cumplimiento de requisitos y condiciones fijados en el consentimiento para demandar.   Ilustrativo es el caso de autos.   Aunque el pronunciamiento fue favorable al erario, (pudo ocurrir que' se dictara en contrario) la Sala fijó limitaciones en la imposición que envuelven normas, sobre las cuales no había ·pasado el Secretario de Hacienda, en cuanto a la determinación del "valor" de una donación o las deducciones permisibles contra la misma. (³)

*Se modifica la sentencia recurrida eliminándose de la misma toda conclusión o pronunciamiento relativo a la contribución sobre donaciones, y así modificada se confirmará.*

---

(³) Véanse además: *Cervecería India* v. *Secretario de Hacienda,* 80 D.P.R. 271, en donde existía una determinación final administrativa en el sentido de que cierto equipo industrial no estaba exento de tributo bajo la sec. 16–B de la Ley de Rentas Internas, y se revocó por falta de jurisdicción la sentencia del Tribunal Superior que falló en los méritos, al no haberse pagado previamente el arbitrio debido a lo cual no existía una determinación administrativa denegando su devolución;  y *The Texas Co.* v. *Tribunal,* resuelto en 2 de marzo de 1961, ante, pág. 134 en donde se confirmó la negativa del Tribunal Superior a fallar un aspecto del caso por no haber el contribuyente sometido cierta prueba sobre rotura o pérdida al Secretario dentro de determinado período fijado en la sec. 16–C (b) de la Ley de Rentas Internas, no existiendo por lo tanto una determinación administrativa sobre tal hecho antes de dilucidarse la controversia en corte.