*294 Opinión disidente emitida por el
Juez Presidente Señor Hernández Denton, a la cual se une la Juez Asociada Señora Rodríguez Rodríguez.
[Ajunque pusieron silencio a las lenguas, no le pudieron poner a las plumas, las cuales, con más libertad que las lenguas, suelen dar a entender [al pueblo] lo que en el alma está encerrado. Miguel de Cervantes, Don Quijote de la Mancha, Parte I, Cap. XXIV.
Durante los últimos meses, a través de la disidencia firme, pero respetuosa, le hemos hecho saber a nuestro país que muchas de las decisiones que este Tribunal ha emitido constituyen actos de “legislación judicial”(1) de “retroceso histórico”(2) de meros “ritualismos procesales” que “responde [n] más al automatismo y a la miopía judicial que a la precisión jurídica”,(3) de una “concepción formalista”,(4) de un “razonamiento autómata”(5) o de “un raciocinio que nos recuerda las distopías ficticias de George Orwell y la represión policiaca de los regímenes totalitarios de la historia moderna”. (Énfasis suplido.)(6). En fin, “un huracán de cuyo embate nuestro pueblo tardará mucho tiempo en reponerse”. (Énfasis en el original.)(7)
Pensábamos que nuestro llamado haría eco en la conciencia de la mayoría de este Tribunal. Lamentablemente, *295 ello no ha sido así. Hoy, nuevamente, nos vemos obligados a honrar nuestro juramento para señalar que la opinión emitida en el caso de autos modifica la naturaleza del recurso de injunction y “tiene el potencial de descalabrar el sistema contributivo del país”. Como sentencia un conocido refrán popular: “la verdad, aunque severa, es amiga verdadera.”
Los que estamos en un foro colegiado, como lo es el Tribunal Supremo de Puerto Rico, tenemos que tolerar las voces disidentes, aunque en ocasiones nos incomoden. Al adjudicar las controversias ante nuestra consideración, sin duda alguna, cada uno de nosotros tiene una responsabilidad constitucional ante el país. Esa responsabilidad exige que al descargar nuestra función de juzgar una controversia, lo hagamos conforme a Derecho. Si entendemos que en un caso en particular el criterio mayoritario se aparta de esa máxima judicial, así debemos expresarlo todas las veces que sean necesarias y de la forma que estimemos más adecuada para que el país conozca nuestro parecer. Disentir es, pues, un acto inherente a la naturaleza de nuestro rol como jueces. Basta con examinar el legado de todos los que impartieron justicia desde este estrado apelativo para darnos cuenta de que, al disentir enérgicamente y a base de los fundamentos adecuados, enriquecemos nuestra tradición jurídica.
Ese legado también nos ha enseñado que el Estado de Derecho en un sistema democrático como el nuestro no puede ni debe estar sujeto al vaivén de los procesos electorales. Aquellos que vestimos la toga debemos regirnos por este principio tan fundamental que, en esencia, es el pilar de la independencia judicial. Oportunamente, la historia sabrá juzgarnos.
I
En momentos en que el Estado se enfrenta a una crisis fiscal sin precedentes, una mayoría de este Tribunal decide *296 enmendar la Ley de Injunction para permitir que un concesionario de autos impugne la facultad del Secretario de Hacienda para cobrar la diferencia en arbitrios que surge del cambio en el “precio sugerido de venta al consumidor”, que es la base contributiva para pagar dicho tributo cuando se introducen los vehículos de motor al país. Por entender que esta decisión es contraria al espíritu y a la letra de la Ley de Injunction y que, en el proceso, se arroga de las facultades constitucionales de la Asamblea Legislativa, nuevamente nos vemos obligados a disentir. No podemos suscribir una opinión que le propina mía estocada fatal a los esfuerzos legítimos del Departamento de Hacienda para combatir un posible esquema de evasión contributiva y velar por que se cumpla con el pago de los impuestos que se le deben al erario.
En este caso, Yiyi Motors, Inc. (Yiyi Motors) —concesionario de los vehículos de motor marca Nissan— presentó en el Tribunal de Primera Instancia, Sala Superior de San Juan, una “Demanda y solicitud de injunction”. Según se desprende de dicho documento, la empresa solicitó una or-den provisional de “injunction” y una orden permanente para que, entre otras cosas, el Secretario de Hacienda cesara y desistiera de: (1) sustituir ilegalmente la base fiscal establecida en el Código de Rentas Internas para el pago de arbitrios de vehículos de motor; (2) imponer el pago de arbitrios al concesionario, y no al consignatario, conforme establece el Código de Rentas Internas, y (3) imponer contribuciones ilegales sobre el pago de arbitrios a vehículos importados.
En su recurso, Yiyi Motors cuestionó la autoridad del Secretario de Hacienda para verificar las transacciones de venta realizadas por los concesionarios, con el propósito de detectar variaciones en el “precio sugerido de venta al consumidor”, base contributiva según la cual se computa el pago de arbitrios por la importación de automóviles. Según la empresa, esta iniciativa de fiscalización le causó daños *297 irreparables, ya que el Departamento de Hacienda se negó a expedirle el recibo de pago necesario para inscribir los vehículos de motor que vendió a sus clientes. Esto, pues Yiyi Motors no pagó la diferencia en arbitrios que surgió entre el precio por el cual vendió tales unidades era mayor al que se había informado al Secretario de Hacienda.
Aun cuando la demanda no contiene una causa de acción, pues se limita a esbozar las razones por las cuales se debe conceder el recurso de injunction solicitado, la Opinión del Tribunal la utiliza para resolver que el Secretario de Hacienda no puede fiscalizar el pago de arbitrios por la importación de automóviles luego de realizado el pago correspondiente. Según colige el Tribunal, la autoridad del Secretario de Hacienda para constatar que los importadores de automóviles y sus concesionarios cumplan con el pago del referido arbitrio se limita a revisar la razonabilidad del “precio sugerido de venta al consumidor” informado al momento de introducirse los vehículos al país. Por ende, y de acuerdo con su conclusión sobre los méritos del caso, este Foro resuelve que el recurso extraordinario de injunction es el adecuado para atender el reclamo de la empresa.
Ahí, precisamente, se establece nuestra diferencia con la Opinión del Tribunal. Desde principios del siglo XX en nuestro ordenamiento está vedado utilizar el recurso de injunction —remedio proveniente de la equidad anglosajona— para impedir la imposición o el cobro de cualquier contribución establecida por las leyes de Estados Unidos o de Puerto Rico. Véase Art. 678 del Código de Enjuiciamiento Civil de 1933 (32 L.P.R.A. sec. 3524(7)).
Es conocido que este principio es producto de la naturaleza del remedio de injunction y que, además, se basa en hondas consideraciones de política pública y de ordenada administración del Gobierno. De hecho, la importancia de este precepto y de la norma estatutaria en el que ha sido consagrado nos requiere pasar por alto cualquier disputa en cuanto a si el demandante es un contribuyente sujeto al *298 ámbito de la ley, así como en cuanto a la legalidad de una contribución. Sencillamente, tales argumentos no se pueden considerar en un procedimiento de injunction. Véase D. Rivé Rivera, Recursos Extraordinarios, 2da ed. rev., San Juan, Programa de Educación Jurídica Continua, Universidad Interamericana Puerto Rico, pág. 67.
A tales efectos, en Cafeteros de P.R. v. Tesorero, 74 D.P.R. 752, 764-765 (1953), expresamos:
La regla ... (primero es pagar antes que litigar), está sólidamente basada en una política general inspirada en la protección de intereses sociales de mayor validez y significación que el interés individual transitorio en rehuir el pago inmediato de una contribución. El gobierno no debe ser obstruido en el ejercicio de sus funciones. La doctrina prohibitoria de injunctions al existir un remedio adecuado en ley se basa en el deseo de evitar la paralización de las actividades gubernamentales, en armonía con la protección de los intereses legítimos del contribuyente al concederle a éste una oportunidad razonable de hacer valer sus derechos en el remedio ordinario en ley que está a su alcance.
... Desde el pinito de vista de la equidad, podría argumentarse que sería injusto y opresivo obligar a una persona que claramente no es una contribuyente a pagar una contribución que ella no adeuda, y que es absolutamente nula, y luego obligarla a iniciar un procedimiento de reintegro. Pero no podemos olvidar que muchas doctrinas jurídicas son resultado de un proceso de pesar y aquilatar distintos intereses y necesidades individuales y públicas. El interés en evitar una inconveniencia individual inmediata debe quedar subordinado, en estas situaciones, al interés social, de mayor significación, de evitar una paralización en las actividades gubernamentales. (Énfasis suplido.)
Es evidente, pues, que permitir que un litigante cuestione la imposición de una contribución mediante un injunction no sólo lesionaría intereses sociales de la más alta jerarquía, sino que presentaría el riesgo de que se paralicen los esfuerzos del Gobierno para recaudar fondos. Es decir, la utilización del recurso de injunction en tal con *299 texto tiene el potencial de descalabrar el sistema contributivo del país. En efecto, la única excepción a esta doctrina —inaplicable en el caso ante nos— existe sólo para amparar a los demandantes que carezcan totalmente de un remedio adecuado en ley y que presenten circunstancias especialmente extraordinarias que exijan recurrir al remedio coercitivo del injunction. Dicha excepción, sin embargo, no está libre de críticas, pues se ha argumentado que como no se basa en el texto de la Ley de Injunction, ésta bien podría ser producto de un acto de “legislación judicial”. Véanse: Cafeteros de P.R. v. Tesorero, supra, pág. 767 esc. 5; The Texas Company v. Domenech, Tes., 50 D.P.R. 432 (1936); Rivé Rivera, op. cit., pág. 67.
A pesar de la claridad de la normativa reseñada, la cual es producto de un mandato legislativo expreso, la Opinión del Tribunal decide emitir un injunction contra el Secretario de Hacienda para precisamente impedir el cobro de contribuciones que, según Yiyi Motors, son ilegales. No podemos suscribir la postura asumida por el Tribunal, pues consideramos que ésta afectará la marcha ordenada del Gobierno y, contrario al mandato del legislador, abrirá las puertas al uso del “injunction” para cuestionar el cobro de contribuciones a pesar de que existen mecanismos legales adecuados para hacerlo. En esencia, la Opinión del Tribunal enmienda la Ley de Injunction y, al así decidir, se arroga una facultad claramente legislativa.
Más aún, la decisión que emite hoy una mayoría de los integrantes de este Foro, pasa por alto tres deficiencias fundamentales que aquejan al recurso instado por Yiyi Motors. En primer lugar, no existe tal cosa como un “caso de injunction”, un “caso de embargo” o un “caso de sindicatura”. El recurso de injunction no es más que un remedio provisional, o permanente, para hacer efectivo el derecho sustantivo que se ejercite en la demanda principal. Rivé Rivera, op. cit, pág. 45. No obstante, en este caso, una lectura de la “demanda” que la empresa presentó ante el *300 tribunal de instancia revela, en efecto, que lo único que solicitó fue el remedio extraordinario de injunction.
Además, como hemos visto, no importa si una persona puede probar que ha sufrido daños irreparables a raíz de la imposición o el cobro de una contribución. La norma que prohíbe la expedición de injunction para restringir tales acciones fiscales está diseñada, precisamente, para limitar la emisión de órdenes de esa naturaleza, aun si se prueba la existencia de los referidos daños. Es decir, los méritos del caso son impertinentes para efectos de tal prohibición.
Por último, incluso si partiéramos de la premisa de que en este caso podría emitirse un injunction para limitar las facultades fiscales del Departamento de Hacienda, de una simple lectura del expediente ante nos se deducee que Yiyi Motors no probó que ha sufrido daño irreparable o que carece de un remedio adecuado en ley. En ese sentido, según ha argumentado el Estado a través de todo el proceso judicial seguido en el caso de autos, la empresa conoce de otros remedios para impugnar el cobro de los arbitrios en controversia. Para agosto de 2001, el Departamento de Hacienda le notificó a Yiyi Motors una deficiencia de $755,299.82 en arbitrios y la empresa la impugnó mediante un recurso de revisión presentado ante el Tribunal de Primera Instancia, Sala Superior de San Juan, en el caso civil núm. KCO-2001-0027.
No obstante todo lo anterior, la Opinión del Tribunal concluye que en casos como éste “no es necesario probar daños irreparables más allá de los alegados en general en la demanda”. Opinión del Tribunal, pág. 275. Es sorprendente la citada aseveración, pues la existencia de daños irreparables constituye el requisito de umbral para la concesión de un injunction como el que solicitó Yiyi Motors. El Tribunal, sin embargo, revive jurisprudencia que abandonamos décadas atrás para validar su razonamiento. Véase Durlach Bros., Inc. v. Domenech, Tes., 47 D.P.R. 654, 659 (1934). Con ello, este Tribunal demuestra que en lugar de *301 interpretar nuestro Derecho a tono con las realidades de la época, revive una doctrina de un tiempo ya superado. Ello, a pesar de la existencia de una prohibición tan taxativa como la impuesta por la Ley de Injunction.
Por consiguiente, en este caso Yiyi Motors primero debió pagar el arbitrio que a su entender era ilegal y, luego, debió solicitar el reintegro ante el Departamento de Hacienda. Como ese no fue el curso de acción que siguió dicha empresa, y en atención a los principios antes reseñados, denegaríamos el recurso extraordinario de injunction solicitado por Yiyi Motors y confirmaríamos la sentencia del Tribunal de Apelaciones.
II
Ahora bien, como el Tribunal decide considerar los méritos de la controversia en este caso, no podemos —en conciencia— dejar de expresar nuestro criterio al respecto.
Estamos atravesando por una época de crisis fiscal sin precedentes, en la que los recursos del Estado son cada vez menos y, como resultado, se han realizado ajustes diversos y severos en el Gobierno. Por eso, nos parece un contrasentido que este Tribunal resuelva que el Secretario de Hacienda está impedido de fiscalizar el pago de arbitrios sobre la venta de vehículos de motor, luego de que éstos se importen al país, para allegar más recursos al erario. Esta conclusión, a nuestro juicio, dificulta aún más la tarea de detectar la evasión contributiva y da marcha atrás a los esfuerzos que desde hace más de quince años ha realizado el Departamento de Hacienda para asegurarse que se cobren los arbitrios correspondientes. La Opinión del Tribunal contraviene la intención legislativa de la Ley de Arbitrios sobre Vehículos de Motor, Ley Núm. 80 de 17 de octubre de 1992 (13 L.P.R.A. sec. 9.001 et seq.). Es por ello que, sobre este particular, coincidimos con el análisis ex- *302 puesto en la Opinión disidente de la Jueza Asociada Señora Fiol Matta.
Por último, por entender que en las circunstancias del caso de autos no se puede utilizar el injunction para impedir el cobro de una contribución —aun cuando se alegue que ésta es ilegal— y por considerar que el resultado al que llega la Opinión del Tribunal tendrá unos efectos incalculables para las arcas públicas, respetuosamente disentimos.

 Véase post, pág. 299.

 íd., pág. 294; Pueblo v. Díaz, Bonano, 176 D.P.R. 601, 672 (2009), opinión disidente.

; Crespo Quiñones v. Santiago Velázquez, 176 D.P.R. 408, 424 (2009), opinión disidente. Véanse: Pueblo v. Díaz De León, 176 D.P.R. 913, 950 (2009), opinión disidente

 Pueblo v. Díaz De León, supra, pág. 948.

 Pueblo v. Díaz, Bonano, supra, pág. 659.

 íd., pág. 663.

 Suárez Cáceres v. Com. Estatal Elecciones, 176 D.P.R. 31, 107 (2009).